# CLARK *v.* UNITED STATES.

CRIMINAL LAW; STATUTORY CONSTRUCTION; REPEAL BY CODE OF PRE-
EXISTING LAWS; GRAND JURORS, STATUTORY REGULATION AND QUALI-
FICATION OF.

1. The acts of Congress regulating the selection and qualifications of
   grand and petit jurors in this District prior to January 1, 1902,
   when the new code became effective, having been specially enacted
   for and given exclusive operation in this District, were not con-
   tinued in force by section 1 of the code, which provides that
   certain laws, including " all acts of Congress by their terms applica-
   ble to the District of Columbia and to other places under the juris-
   diction of the United States, in force at the date of the passage of
   this act, shall remain in force, except in so far as the same are
   inconsistent with, or are replaced by, some provision of the code;"
   nor was the old jury law included in or excepted from any of the
   repealing provisions of the code.
2. There being such substantial differences between the law relating to
   the selection and qualifications of grand jurors, prior to January 1,
   1902, when the new code went into effect, and the provisions of the
   code with respect thereof, and no provision having been made by
   the code for continuing in force the provisions of the former laws
   relating to jurors until such times as the new regulations might be
   put in formal operation, a grand jury summoned prior to January
   1, 1902, could not be lawfully impaneled subsequent thereto, and
   an indictment found by such a grand jury is void and of no effect.
3. The joint resolution of Congress, passed in December, 1901, provid-
   ing that all grand and petit juries drawn under existing laws at
   the time the code went into effect should serve out their respective
   terms, not having been approved until January 8, 1902, did not
   have the effect of validating an indictment found by a grand jury
   drawn prior to January 1st but not impaneled until January 8,
   1902.

No. 1165.  Submitted January 21, 1902.  Decided January 24, 1902.

HEARING on an appeal (specially allowed) by the defend-
ant from an interlocutory judgment of the Supreme Court of
the District of Columbia, sustaining a demurrer to a plea in
abatement to an indictment for larceny.          *Reversed.*

The facts are sufficiently stated in the opinion.

*Mr. R. Ross Perry* and *Mr. D. W. Baker* for the appellant:

1. Before taking up and considering the subject-matter of the several acts of Congress in regard to a grand jury or petit jury under the law that existed before the code, it will· be necessary to consider whether or not that law is repealed. The several acts of Congress relating to the summoning, qualifications, and impaneling of juries in the District of Columbia are special acts of Congress relating to said District. These provisions are contained in the Revised Statutes of the District of Columbia, sections 851 to 875, as amended by the act of March 1, 1889 (25 Stat. 749), and certainly these laws are repealed by the act of Congress known as "An act to establish a code of law for the District of Columbia." By section 1 of the code certain laws remain in force. The common law, British statutes, the principles of equity and admiralty, all general acts of Congress not locally inapplicable to the District of Columbia, and all acts of Congress by their terms applicable to the District of Columbia and to other places under the jurisdiction of the United States in force at the date of the passage of the code remain in force, except so far as they are inconsistent with or replaced by some provisions of the code. It is hardly necessary to consider what this section means, as it is very plain. The section enumerates specifically what laws remain in force and in no way does it name those acts of Congress that relate solely to the District of Columbia. The part of the section which says: "And all acts of Congress by their terms applicable to the District of Columbia and to other places under the jurisdiction of the United States," means those acts of Congress which include, not only the District of Columbia, but the territories, dock yards, arsenals, and other places over which the jurisdiction of the United States extends.

This section, not including the acts of Congress that relate solely to the District of Columbia, might repeal these acts

by implication; but it is not necessary to consider that question, for when we come to section 1636 of the code we find an express repeal of certain laws that were in existence at the time the code went into effect. By this section " all acts and parts of acts of the general assembly of Maryland, general and permanent in their nature, all like acts and parts of acts of the legislative assembly of the District of Columbia, and *all like acts and parts of acts applying solely to the District of Columbia in force in said District on the day of the passage of this act, are hereby repealed."* Then certain enumerated acts and parts of acts which are fully set out in the section, none of them referring in anywise to the question of grand or petit juries, are excepted from the general repealing clause. It would seem hardly necessary to cite any authorities to show the repeal of the acts specified in this section with the exceptions as therein enumerated, for certainly this is an express repeal of all those statutes, and at the time that the code went into effect all of those statutes except the ones enumerated ceased to exist. It may be contended that the provisions of the code that relate to the Supreme Court continued it in its present status, with its jury, etc., but there is no foundation for any such contentions, because the very subchapter of the code upon this subject (subchapter 3, page 12) defines the jurisdiction of the court in its present status and provides for the manner of drawing, examining, and impaneling both the grand and petit juries, and states specifically how and when they shall be drawn and their qualifications, which differ materially from the proceedings had prior to the code, nor is there anything in the several sections of the code that would permit the court to so construe the laws as to say that the old law was not absolutely repealed when the code went into effect, as the statutes are clear and unambiguous; nor can it for a moment be contended that the court, being a court of general jurisdiction, had a right to summon a common-law jury, for the code provides fully for the jury, and besides, the grand jury summoned is in no sense a common-law grand jury.

In the case of *Bush* v. *The District of Columbia,* 1 App. D. C. 1, this court, in construing the several statutes therein

mentioned, held that it was not within the judicial power by construction to cure defects that existed in statutes, even though they were unjust or oppressive. In this case it would seem that the defect is so clear that only the legislative power could remedy it, and there is no room for construction. *St. Paul, etc.* v. *Phelps,* 137 U. S. 528. The very point in question was considered by the Supreme Court of the State of Louisiana, in the case of *State ex rel. Maurice* v. *Judge,* 30 La. Ann. 603.

2. This brings us to consider the distinctions between the several repealed acts of Congress and the code, in so far as they affect juries.

The several acts of Congress are all contained in chapter 36, page 302, of Albert's compilation of the statutes of the District of Columbia. Among other things, it is provided that the Supreme Court of the District of Columbia shall appoint certain persons, which persons were called under the law jury commissioners, to make a list of jurors for service. The names selected by these persons were placed in the jury-box and sealed; then the box was delivered to the clerk of the Supreme Court of the District of Columbia for safe-keeping, and at a certain time the clerk opened the box and drew therefrom the names of a fixed number of persons for service; and thereupon, at least five days before the beginning of the term for service, it was the duty of the marshal to notify each person, and in case all of the names were withdrawn from the box and the several juries not yet impaneled the court could, under certain conditions, order the marshal to summon persons to serve. The term of the grand jury was three months and that of the petit jury one. The qualifications of a juror were that he be a citizen of the United States, a resident of the District of Columbia, over twenty-one and under sixty-five years of age, and a good and lawful man, who had never been convicted of a felony or misdemeanor involving moral turpitude.

Under the code, the clerk of the Supreme Court of the District of Columbia, the United States marshal, and the collector of taxes for said District *are constituted the jury com-*

*missioners, taking the place of the jury commissioners appointed by the Supreme Court of the District of Columbia under the old law.* The term of service for the petit jury is two months, unless discharged before, or continued after that time in order to render a verdict where they had been already impaneled and were trying a case. The term of service of the grand jury begins with the term of the criminal court and ends with that term unless sooner discharged. From the jury-box which is sealed by the jury commissioners and delivered to the clerk are drawn by the clerk the names of the persons to serve on these several juries, and the marshal summons them to appear. Each time the clerk draws from the box he must publicly break the seal. The qualifications of a person to act as a juror under the code are as follows: No person shall be competent to act as a juror unless he be a citizen of the United States and a resident of the District of Columbia, over twenty-one and under sixty-five years of age, *able to read and write and to understand the English language,* and a good and lawful man, who has never been convicted of a felony or a misdemeanor involving moral turpitude.

There were certain persons exempt from jury duty under both laws, and also under both, certain persons could, if they desired, be excused. These provisions differ somewhat, but it is unnecessary to consider them.

It will be seen at once that a jury under the code is an entirely differently constituted body of men than a jury under the old law; different persons constitute the jury commissioners; the proceedings in drawing are somewhat different, and the qualifications of a juror under the code are entirely different from the qualifications required by the old law.

3. Before taking up and considering the effect of the repeal of the old law upon the grand jury that was summoned, it might here be said that the plea in abatement shows that the grand jurors who were interrogated as to their qualifications were interrogated as to the qualifications required by the old law and not as to the qualifications required by the code which was in effect at the time that they were exam-

ined; so that, independent of the question of the right of these
persons to appear in court and be examined, the appellant was
confronted by a body of men who had not the qualifications
required by the law to constitute the grand jury on the day
on which he was indicted.

Not only was this error, but when the code went into
effect everything that was done under the old law by the jury
commissioners and other persons who had any authority un-
der that law was absolutely null and void, for their authority
to act ceased to exist with the repeal of the act, and the court
below had no authority to proceed further with the grand
jury.

4. This brings us to consider the effect of the repealing
of the old jury act by the code. The repeal of a statute is
held to have the effect of expunging it from the statute book
as completely as if it had never existed, except as to vested
rights. All actions pending at the time of the repeal, unless
expressly saved, and all proceedings then incomplete which
have for their foundation a repeal statute fall with it. Only
such as are fully completed or ripened into judgment are not
affected by the repeal. It is said as to pending actions, un-
less saved, that they must fall with the repeal, because when
a court comes to pronounce judgment it finds itself without
a law authorizing a judgment to be rendered. This principle
is so well established that it can hardly be controverted. It
might here be said that this principle has been acknowledged
by the legislative branch of the Government, as well as the
judicial. The very act that established the Supreme Court
of the District of Columbia (act of Congress, March 3,
1863, 12 U. S. Stats. at Large, 762) excepted pending suits,
and after abolishing the old courts further provided that
" process issued out of any of said courts shall also be re-
turned to the court hereby established." One of the first
cases that we find on this subject is that of the *Bank of Hamil-
ton* v. *Dudley's Lessee,* 2 Pet. 523, where the Supreme Court
of the United States held that the power of an administrator
to sell property under an authority given by an act was taken
away by a subsequent act repealing the first act, although the
administrator had obtained an order from the court to sell.

This case seems to settle the point involved here, for, admitting — which, however, we do not — that the court had the power to summon this grand jury, still that power ceased to exist before the grand jury appeared, for the authority of the court over it ceased with the repealing of the act under which it was summoned. *Insurance Co.* v. *Ritchie,* 5 Wall. 544; *Ex parte McCardle,* 7 Wall. 514; *Assessors* v. *Osborne,* 9 Wall. 575. In the last-mentioned case it will be noticed that it was not the appellate jurisdiction of the court that was called in question, but the original jurisdiction of a circuit court. In this case the jurisdiction of the Supreme Court of the District of Columbia to act under an act of Congress which was repealed is a question of jurisdiction, and the court at the time that it assembled the jury had no jurisdiction under any act of 'Congress to organize the body of men that appeared. The law, as laid down in the cases heretofore quoted, was again reaffirmed by the Supreme Court of the United States in the following cases : *The Railroad Co.* v. *Grant,* 98 U. S. 398; *Sherman* v. *Grinnell,* 123 U. S. 679; *Morey* v. *Lockhart,* 123 U. S. 56; *Wilkinson* v. *Nebraska,* 123 U. S. 286; *Gurnee* v. *Patrick Co.,* 137 U. S. 141; *National Exchange Bank of Balto.* v. *Peters,* 144 U. S. 570. See also *New London RR. Co.* v. *Boston, etc., RR. Co.,* 102 Mass. 386; *Williams* v. *County Commissioners,* 35 Me. 345; *Wade et al.* v. *St. Mary's Industrial School,* 43 Md. 178; *Birdseye* v. *Shaeffer,* 37 Fed. Rep. 821; *United States* v. *Boisdore's Heirs,* 8 How. 117; *McNulty* v. *Batty,* 10 How. 77. From these authorities it would appear that when the act that repealed the original act went into effect everything that was *in fieri* fell with the old law, and that the court had no further jurisdiction over any matter that was not fully concluded, unless there was a saving clause in the statute. In the code there are several clauses which preserve certain rights and save suits pending, but nowhere is there any attempt to give the Supreme Court of the District of Columbia authority to draw a grand jury other than according to the provisions of the code, or authority for the grand jury drawn under the old act to constitute a grand jury after the code became the law.

This was so apparent that Congress attempted, by the joint resolution which was signed by the President during the afternoon of January 8, 1902, to correct this defect. This resolution was not in effect at the time the criminal court of the District of Columbia impaneled the grand jury that indicted the appellant, and the resolution itself does not attempt to confirm any act already done; therefore, it can in no way affect the illegally constituted body of persons which indicted the appellant. Therefore, the court had no right to consider this resolution as curing any defect that existed prior to its going into effect. This resolution, according to the plea in abatement, went into effect in the afternoon of January 8, 1902, and in no way could be applied to acts done in the morning of that day. As before said, it by its very terms has no retroactive effect, and, as an act of Congress does not go into effect until it has been approved by the President, it is not a law during any time of the day on which it is signed previous to the act of signing. *Louisville* v. *Savings Bank,* 104 U. S. 469; *Strauss et al.* v. *Heiss,* 48 Md. 292; *United States* v. *Stoddard, etc., Co.,* 89 Fed. Rep. 701.

*Mr. Ashley M. Gould,* United States Attorney for the District of Columbia, and *Mr. Peyton Gordon,* Assistant, for the appellee:

1. The intention of Congress is to be gathered from the whole act. It is an elementary rule " that construction is to be made of all the parts together, and not of one part only by itself." Endlich on Statutes, Sec. 35; *Scott* v. *Latimer,* 89 Fed. Rep. 843 (and cases cited); *Heydenfeldt* v. *Mining Co.,* 93 U. S. 634.

The language of section 1636 is that all the acts and parts of acts of Congress, etc., " in force in said District *on the day of the passage of this act are hereby repealed,*" except, etc. The word " hereby " relates to the present, and the present then was March 3, 1901, the date of the passage of the act; but reference to another part of the code and a consideration of the circumstances under which the code act was passed

make it clear that Congress did not intend in passing it to leave the District without the benefit of a large and important body of its law from March 3, 1901, until January 2, 1902. The code begins with the declaration " that the following is hereby enacted and declared to be a code of law for the District of Columbia, to go into effect and operation from and after the first day of January, in the year of our Lord nineteen hundred and two." From the two parts of the code noted, when read together, it is apparent that Congress did not intend that there should be a repeal of any existing law until from and after January 1, 1902.

Hence the act of March 1, 1889, remained in full force and effect, at least, until the code became operative. Did it then become vigorless for all purposes?

We say that it did not, and that it did continue in force in so far as such continuance was necessary for the purpose of providing trial jurors for the court for the month beginning with the first Tuesday in January and terminating with the Monday preceding the first Tuesday in February, 1902, and grand jurors for the term of the court beginning on the first Tuesday of January, 1902.

The reasons for this position are conclusive. It will be observed that the Supreme Court of the District of Columbia is not abolished, nor are its terms, as previously established, abolished by the code.

The court passed from the old to the new dispensation, in so far as the administration of justice was concerned, with all its functions and powers unimpaired, and this by the very terms of the code itself.

Section 60 of subchapter 3 provides that the court " shall continue as at present constituted," and section 61 provides that it shall " have and exercise all the jurisdiction possessed and exercised " by it " *at the date of the passage of this code,*" the obvious import of which is that the court should have and exercise, after the code went into effect, all the jurisdiction it possessed and exercised on March 3, 1901, the date of its passage, when not incompatible with or until it became incompatible with some specific provision of the code relating to such jurisdiction.

The act of March 1, 1889, contemplated the drawing of names for trial jurors in the court for the month of January, 1902, and contemplated also the drawing of grand jurors for the term of the court beginning with the first Tuesday of January, 1902.

As we have seen, the court continues and its terms continue, and the code nowhere forbids the impaneling of trial jurors for January, 1902; in fact, Congress, aware of the authority for and of the manner of obtaining jurors provided by the act of March 1, 1889, and also of the terms established by the court, apparently acted upon the assumption that jurors to be drawn and impaneled under that act were to serve during the month of January, 1902, for no provision is made in the code for trial jurors until the first Tuesday in February, 1902 (Sec. 202), and upon the assumption that grand jurors were to be drawn and impaneled under the old act for service at the January term, 1902, of the court, for the only provisions of the code relating to grand jurors are that they shall be drawn " at least ten days before the commencement of each term of the criminal court " (Sec. 204), and that their term of service " shall begin with each term * * * and shall end with such term unless the jury shall be sooner discharged by the court " (Sec. 203).

In no other view can the provisions of sections 60 and 61 of the code, in regard to the court and its jurisdiction, be fully operative.

If it can be reasonably avoided, an intention should not be imputed to Congress to needlessly stop the administration of justice, and thus inconvenience the public and individuals and impair the constitutional rights of accused persons to a speedy trial, which would in effect be done if appellant's contention were sustained.

The construction suggested on behalf of the United States of the provisions of the code bearing upon the case at bar reconciles one provision with another, gives effect to all, and avoids such embarrassing consequences. Endlich on Statutes, Sec. 245 ; *Davis* v. *Fairborn,* 3 How. 636.

As has already been stated, the evident intention of Congress in passing the act of March 3, 1901, was to supply a

code of laws for the District of Columbia. This is expressed in the title of the act, and is apparent from the most cursory reading of it. Its further intention was to provide proper courts to administer the laws so enacted; not only that, but it expressly continued the existence of the court of general jurisdiction in the District. Surely the intention cannot be imputed to Congress of doing a vain thing — that is, providing a court for the District and failing to furnish the court with the necessary machinery to constitutionally carry out its functions. As was said by the Supreme Court of the United States, in the case of *Kendall* v. *U. S.*, 12 Peters, at p. 619: " Congress has the entire control over the District for every purpose of government, and it is reasonable to suppose that in organizing a judicial department here, all judicial power necessary for the purposes of government would be vested in the courts of justice."

2. It is a well-established principle of statutory construction, moreover, that if the words of the statute, taken literally, bear an unreasonable signification, there may be some deviation therefrom in order to prevent absurd results or to prevent the unjust operation of the statute; or, in the language of the Supreme Court of the United States, " it will always be presumed that the legislature intended exceptions to this language which would avoid results of this character." *Holy Trinity Church* v. *United States,* 143 U. S. 457; *Bush* v. *District of Columbia,* 1 App. D. C. 1; *United States* v. *Kirby,* 7 Wall. 482; *Kohlsaat* v. *Murphy,* 96 U. S. 153; *Scott* v. *Latimer*, 89 Fed. Rep. 843 (Circourt Court of Appeals, 8th Circuit).

3. It is further submitted that, under the Constitution of the United States, the people of the District of Columbia are entitled to the protection afforded by a grand jury, as well as to the right of trial by a petit jury, and that any act of Congress which attempts, even for a limited period, to take away these constitutional guarantees must be deemed to be invalid. If, therefore, the repeal provisions in the code could be so construed as to deprive the District of Columbia of these rights, then said repeal clauses are, *pro tanto,* invalid,

20

and inasmuch as they are readily separable from the valid portions of said act, they may be disregarded. *The State Freight Tax Case,* 15 Wall. 232; *Albany County* v. *Stanley,* 105 U. S. 305; *Presser* v. *Illinois,* 116 U. S. 252. When an act repeals another in whole or in part, and substitutes some provision or provisions in lieu of those repealed, the latter remain in force until the substituted provisions come into operation. *Moore* v. *Houston,* 3 S. & R. (Pa.) 185; *Leyner* v. *State,* 8 Ind. 491; *Rogers* v. *Vass,* 6 Iowa, 405; *McArthur* v. *Franklin,* 16 Ohio St. 193. See also *McCrory* v. *Anderson,* 103 Ind. 12. It is apparent there was no vice in the proceedings below, but, even if there had been, it was relieved by the joint resolution approved January 8, 1902.

Mr. Justice SHEPARD delivered the opinion of the Court:

In order to bring up for speedy determination the question of the regularity of the organization of the grand jury of the Supreme Court of the District for the term commencing January 7, 1902, this appeal was allowed to be taken from an order of a special term of that court, on January 10, 1902, overruling a plea of abatement to an indictment for larceny.

It appears from the plea that the persons composing that grand jury had been summoned on December 23, 1901, in accordance with the law then in force, to appear in said court on January 7, 1902.

In the meantime an act of Congress entitled "An act to establish a code of law for the District of Columbia," approved March 3, 1901, had, by its terms, taken effect "from and after January 1, 1902."

The said grand jurors, having been summoned under the prior law, were examined touching their qualifications in accordance with the requirements of said law, and sworn and charged thereunder, on January 8, 1902. The indictment in question was returned by them into open court, whereupon the defendant filed his plea in abatement thereof.

Section 1 of the code declares that: "The common law,

all British statutes in force in Maryland on the 27th day of February, 1801, the principles of equity and admiralty, all general acts of Congress not locally inapplicable in the District of Columbia, and all acts of Congress by their terms applicable to the District of Columbia and to other places under the jurisdiction of the United States, in force at the date of the passage of this act, shall remain in force, except in so far as the same are inconsistent with, or are replaced by, some provision of this code."

The acts of Congress regulating the selection and qualifications of grand and petit jurors in force when the members of this grand jury were summoned, were specially enacted for, and given exclusive operation in, the District of Columbia.

Hence, they do not come within the enumeration of section 1 of the Code above set forth.

Those acts of Congress provide, among other things, that (we copy from the careful statement of the brief for the appellant) " the Supreme Court of the District of Columbia shall appoint certain persons, which persons were called under the law jury commissioners, to make a list of jurors for service. The names selected by these persons were placed in the jury box and sealed; then the box was delivered to the clerk of the Supreme Court of the District of Columbia for safe-keeping, and at a certain time the clerk opened the box and drew therefrom the names of a fixed number of persons for service; and thereupon, at least five days before the beginning of the term for service, it was the duty of the marshal to notify each person, and in case all of the names were withdrawn from the box and the several juries not yet impaneled the court could, under certain conditions, order the marshal to summon persons to serve. The term of the grand jury was three months and that of the petit jury one. The qualifications of a juror were that he be a citizen of the United States, a resident of the District of Columbia, over twenty-one and under sixty-five years of age, and a good and lawful man, who had never been convicted of a felony or misdemeanor involving moral turpitude." See Abert's Compiled Statutes, D. C., Chap. 36, p. 302.

The new code contains elaborate provisions relating to jurors for all purposes in the District, which are embodied in sections from 198 to 217, inclusive.

It is sufficient for the purposes of this case to note a few only of the substantial differences between the old law before stated and the new.

There is a complete change in jury commissioners. For those appointed from time to time by the court under the old system have been substituted the clerk of the Supreme Court, the marshal and the collector of taxes of the District. There are some changes respecting the service and the mode of drawing names from the, jury box, which need not be specified.

The competency of jurors under the old law is repeated with this important addition: They shall *" be able to read and write and to understand the English language."*

It appears, therefore, that the grand jurors who returned this indictment were not only selected by persons incompetent to act under the new law, but were impaneled also without regard to their ability " to read, to write and to understand the English language."

Having pointed out that the old law was not included in those specially declared to remain in force by section 1 of the code, under the terms therein provided, it remains to inquire whether it was included in or excepted from any of the repealing provisions of the code. These are found in the last chapter (60) of the code, as published, and embrace sections 1636 to 1642 inclusive.

Section 1636 declares: "All acts and parts of acts of the general assembly of the State of Maryland, general and permanent in their nature, all like acts and parts of acts of the legislative assembly of the District of Columbia, and all like acts and parts of acts of Congress applying solely to the District of Columbia in force in said District on the day of the passage of this act are hereby repealed, except : "—

This is followed by the recital of the exceptions, which are eight in number. As it is conceded that the former law is not within the express terms of any one of these it is unnecessary to state them.

Section 1637 has relation to provisions of certain appropriation acts. Section 1638 contains a saving clause applying to acts done or rights accruing or accrued, or any suit or proceeding had or commenced in any civil cause, before such repeal, etc., to which this proviso is added: " That the provisions of this Code relating to procedure or practice and not affecting the substantial rights of parties, shall apply to pending suits or proceedings, civil or criminal."

Section 1639 relates to acts that may be passed between the date of the passage of the act establishing the code, namely, March 3, 1901, and the date of its taking effect.

Section 1640 contains the same recital of acts as section 1, adding thereto, " any municipal ordinance or regulation," and prefixing the words: " Nothing in the repealing clause of this code contained, shall be held to affect the operation or enforcement in the District of Columbia of "—

Section 1641 provides that: "All offenses committed, and all penalties or forfeitures incurred in the District prior to the date on which this code is to take effect, may be prosecuted and punished in the same manner and with the same effect as if this code had not been enacted."

Section 1642 is a saving clause relating to the bar of the statute of limitations under certain conditions.

It is indeed unfortunate that among the elaborate repealing sections of the code there should be none continuing in force the provisions of the former laws relating to juries, until such time as the new regulations might be put in formal operation, thereby preventing a break in the continuity of the proceedings of the criminal court. The situation, however, will not justify us in reading such a provision into one of the saving clauses, or into one of the exceptions from the general repeal of former laws. There is no ambiguity in the provisions referred to that calls for interpretation, in the course of which an exception might be raised by construction to prevent a result which, had the legislative attention been directed to it, would undoubtedly have been guarded against. Courts cannot be justified in adding a provision to a statute under the guise of construction.

The provisions of the code relating to the subject being explicit, it would serve no useful purpose to review the cases to which we have been referred, where in the necessary interpretation of legislative acts, the courts have been constrained to give special or restricted meanings to ordinary words in order to prevent conclusions manifestly unreasonable or absurd.

The conclusion we have reached is supported by the only decision directly in point that has come under observation. *State, ex rel. Maurice,* v. *Thomas,* 30 La. Ann. 603. There, as here, the old jury law had been repealed and a new one substituted without provision for the interval that must necessarily occur between the time of going into effect and the earliest date upon which its provisions could be brought into practical operation.

The court said: " The act of the 2d of this month went into effect from its passage and repealed all laws in conflict with it, and did not provide that the juries already drawn by the commissioners under the old law should act and be a valid jury for the term or time for which they had been drawn, the new law to the contrary notwithstanding. A saving clause like that or of similar import would have obviated the difficulty, but since the act does not contain it a petit jury cannot be drawn for the superior criminal court, whenever a grand jury is also needed, until a panel of seventy or more names is made and from it a good jury is first selected. This cannot now be done for the present month. A new panel must be formed by the board of jury commissioners under the new law from which the grand and petit juries must be drawn in the manner directed by it."

Another point remains to be briefly considered. Apprehending the very mischief that has occurred, Congress undertook to cure it in December last by passing a joint resolution in which the following clause occurs: " That all grand and petit juries in the Supreme Court of the District of Columbia, and all petit juries in the police court of said District, which shall have been organized or drawn under existing laws at the time this code goes into effect, shall serve

out their respective terms, and vacancies therein shall be filled under existing laws."

This provision, sufficient for the purpose had it gone into effect, as contemplated, before January 1, was unfortunately delayed. Though passed in December, it was not submitted to and approved by the President until the afternoon of January 8, 1902, some hours after the grand jury had been impaneled. It was clearly intended to operate prospectively, hence it is unnecessary to consider whether, if otherwise intended, it would come within the inhibition of *ex post facto* laws.

There being no law authorizing the impaneling of the grand jury which returned the indictment against the appellant, his plea in abatement should have been sustained.

The judgment will therefore be reversed and the cause remanded, with direction to overrule the demurrer and enter judgment on the plea. It is so ordered. *Reversed.*