## NOLAN v. UNITED STATES.
### No. 13498.

Circuit Court of Appeals, Eighth Circuit.
Oct. 14, 1947.

Rehearing Denied Oct. 30, 1947.

Irving R. Brand, (oral argument permitted by court) of Minneapolis, Minn. (Irvin

E. Schermer (appointed by court) of Minneapolis, Minn., on the brief), for appellant.

P. W. Lanier, U. S. Atty., of Fargo, N. D., for appellee.

Before SANBORN, THOMAS, and JOHNSEN, Circuit Judges.

THOMAS, Circuit Judge.

The appellant, George Nolan was indicted, tried and convicted on a charge of first degree murder committed on land belonging to the United States in the city of Devils Lake, North Dakota. The crime was committed in June, 1924. He was tried in November, 1933, and sentenced to life imprisonment December 1, 1933. On appeal to this court his sentence was affirmed January 2, 1935. Nolan v. United States, 8 Cir., 75 F.2d 65.

On August 5, 1946, Nolan filed a motion in the district court to vacate the judgment. On October 15, 1946, an order was entered dismissing the motion, and he appeals.

By his motion to vacate the judgment and by his contentions in this court the appellant assails the jurisdiction of the district court which tried and sentenced him on three grounds:

1. That the grand jury which returned the indictment on which he was tried and convicted was without legal existence;

2. That the sustaining of a demurrer to a former indictment for the same offense was a bar to prosecution under the indictment under which he was convicted; and

3. That the conviction was void because he was denied the right of a speedy trial in violation of his rights under the Sixth Amendment to the Constitution.

The first of these contentions challenging the legal existence of the grand jury is bottomed upon appellant's interpretation of § 284 of the Judicial Code, 28 U. S.C.A. § 421, which provides that

"No grand jury shall be summoned to attend any district court unless the judge thereof, in his own discretion or upon a notification by the district attorney that such jury will be needed, orders a venire to issue therefor. * * *"

The record of the district court shows an order dated August 16, 1933, directing the clerk of the court and the jury commissioner to draw and summon 27 persons to appear and serve as grand jurors at a term of court to be held at Fargo, North Dakota, on September 5, 1933, and that a venire issue returnable at that date. This order was not signed by the judge, and for this reason it is argued that the grand jury which was drawn, served and returned the indictment in question had no legal existence. The record also shows that the clerk and the jury commissioner reported to the court on August 21, 1933, that they had drawn the grand jury "in obedience to the order of the Court for drawing grand jurors * * *." The report sets out the names and residences of the persons drawn. At the bottom of the report an order was entered reading:

"On reading the foregoing report it is ordered that the same be filed and entered with this order upon the minutes of the Court.

"(signed)    Andrew Miller,
                              "Judge."

Appellant cites no authority to sustain his contention that the failure of the judge to sign the order rendered the order null or the grand jury illegal. There is no claim of prejudice, or that any of the grand jurors were disqualified. The statute, it will be observed, does not require the order to be in writing and signed by the judge. Further, the report of the clerk and of the jury commissioner shows on its face that the grand jury was summoned in obedience to the order of the judge and the approval of the report having been signed by the judge there can be no doubt that the order was made by the judge. We are justified at least in so assuming. Reuben v. United States, 7 Cir., 86 F.2d 464, 470. Again, "in enacting this statute, Congress had no intent to legislate as to the validity of indictments. The purpose was merely to prevent the expense of having a grand jury unnecessarily summoned." Morris v. United States, 5 Cir., 128 F.2d 912, 916, certiorari denied, 317 U.S. 661, 63 S.Ct. 60, 87 L. Ed. 531; Breese v. United States, 4 Cir.,

203 F. 824, 828. Moreover, the motion to vacate the judgment on the ground of any irregularity in the summoning of the grand jury comes too late when filed, as in this instance, nearly 13 years after the trial and conviction, and no excuse is shown for not raising the objection before pleading to the indictment. In the present instance, Nolan was represented by able counsel when his plea was entered; and he does not allege that the records of the court were not then available to him. United States v. Gale, 109 U.S. 65, 3 S.Ct. 1, 27 L.Ed. 857; Breese v. United States, 226 U.S. 1, 33 S.Ct. 1, 57 L.Ed. 97; Moffatt v. United States, 8 Cir., 232 F. 522, 529.

The appellant's second contention, that the prosecution was barred by the order sustaining a demurrer to a former indictment for the same offense, was raised for the first time by the motion to vacate the judgment.

The record shows that on May 24, 1929, an indictment was returned by a grand jury charging that Nolan and five others committed the murder charged in the indictment on which Nolan was tried in 1933. On June 3, 1933, Nolan's attorney demurred to the indictment on the grounds "1. That said indictment does not state facts sufficient to charge a public offense or crime; 2. That the specifications contained in said indictment do not support the charge; and 3. * * * that the defendant has been denied a speedy trial contrary to the Sixth Amendment to the Constitution."

The demurrer having been argued, the court "Ordered that said demurrer be * * * sustained, and the same dismissed as to George Nolan." The order then concluded:

"It appearing to the Court that there is reasonable cause to believe that the defendant George Nolan is guilty of the charge of murder, it is

"Ordered that he be held without bail to await the action of the next grand jury."

The court filed no opinion and stated no specific ground for sustaining the demurrer.

Appellant bases his contention on the fact that the indictment upon which he was tried differed from the first indictment in only two substantial respects, namely, that the second indictment omitted the names of the five men charged jointly with Nolan in the first indictment and that the first indictment charged that after the wound was inflicted by all of the defendants the victim "did die" while in the second indictment the charge was that Nolan shot the victim and that he "did then and there die."

It will be observed that Nolan's position is anomalous. He demurred to the first indictment on the ground that it was not a valid indictment. He did not demur to the second indictment, thus admitting its legal sufficiency. His contention now that the sustaining of the demurrer to the first indictment is a bar to prosecution on the second impliedly concedes that the first indictment was legally valid. He can not thus "blow hot and cold." Haugen v. United States, 9 Cir., 153 F.2d 850, 851. He can not insist, after his conviction under the second indictment, that the first indictment which he had successfully assailed by demurrer was valid. The rule applies, therefore, that "the quashing of a bad indictment is no bar to a prosecution upon a good one." United States v. Oppenheimer, 242 U.S. 85, 87, 37 S.Ct. 68, 69, 61 L.Ed. 161, 3 L.R.A. 516. See 22 C.J.S. Criminal Law § 252.

In Amrine v. Times, 10 Cir., 131 F.2d 827, 834, it was said that the question presented by such a situation is whether the defendant has been twice placed in jeopardy within the federal rule. The court then observed that "Generally, second jeopardy does not attach unless the first indictment * * * is valid, or unless the accused is tried and convicted or acquitted on the first indictment. If the trial fails other than on the merits, and the accused does not seasonably object to the dismissal, a second trial for the same offense does not constitute double jeopardy." Citing authorities. Compare Henry v. United States, 9 Cir., 15 F.2d 624; United States v. Owen, D.C., 21 F.2d 868;

United States v. Thompson, 251 U.S. 407, 40 S.Ct. 289, 64 L.Ed. 333.

Finally, appellant contends that the district court was without jurisdiction to try him under the second indictment because he was deprived of his right to a speedy trial in violation of the Sixth Amendment to the Constitution.

It is shown by the record and conceded by appellant that at the time he was indicted in 1929 he was confined in a state penitentiary for another offense against the laws of the state.

Appellant argues that the guaranty of a speedy trial applies to a defendant who is serving a sentence in the penitentiary for another offense. He cites the case of Frankel v. Woodrough, 8 Cir., 7 F.2d 796, 799. In that case the court said: "This opinion is expressly limited to instances of prisoners confined for violations of federal laws and trial, while so confined, on accusations for violations of federal laws. Where it is a matter of a federal prisoner accused under a state law or vice versa, other legal considerations are present which are not here involved or considered * * *." The principles applicable to the situation which exists here have been elucidated by the Supreme Court in Ponzi v. Fessenden, 258 U.S. 254, 42 S.Ct. 309, 311, 66 L.Ed. 607, 22 A.L.R. 879, and in other cases. It is pointed out in the Ponzi case that state and federal courts "do not belong to the same system, so far as their jurisdiction is concurrent." Except for some rule of comity recognized by statute when one system of courts takes jurisdiction of a thing or person that thing or person is withdrawn from the judicial power of the other. The contention presented here was before this court in the case of United States ex rel. Demarois v. Farrell, 8 Cir., 87 F.2d 957, 962. The applicable rule was there stated as follows: "When a person has violated the criminal statutes of two different sovereigns, it is for the interested sovereigns and not the criminal to settle which shall first inflict punishment. United States ex rel. Moore v. Traeger, 9 Cir., 44 F.2d 312, 313. If the defendant's constitutional rights to trial by jury and full opportunity for defense are preserved in both jurisdictions, he cannot object to the order of procedure."

The appellant can not be heard to complain at this late day of a procedure for which he was personally responsible.

Affirmed.