**UNITED STATES of America,**
**Plaintiff,**

v.

**Darwin C. BROWN**
**and**
**M. Thomas Kent, Defendants.**
**Crim. No. 785-64.**

United States District Court
District of Columbia.
Nov. 9, 1964.

See also, D.C., 36 F.R.D. 207.

David C. Acheson, U. S. Atty. for the District of Columbia, and Barbara Lindemann, Asst. U. S. Atty., Washington, D. C., for the United States.

Thomas A. Wadden, Jr., and Peter R. Taft, Washington, D. C., for defendant Brown.

Marshall I. Stewart, Washington, D. C., for defendant Kent.

HOLTZOFF, District Judge.

This is a motion by the defendants to dismiss an indictment on the ground that allegedly the Grand Jury, which returned it, has been illegally summoned and convened.

The defendants rely on Title 11, Section 2306 of the Code of Laws of the District of Columbia. That section is a part of a revision and recodification of the District of Columbia Code, which became law on December 23, 1963. It is substantially a reenactment of Title 11, Sections 1406, 1407 and 1408, which were contained in an earlier code. The prior code provided that whenever the United States Attorney for the District of Columbia shall certify in writing to the Chief Judge of the United States District Court, or in his absence, to the senior associate Judge—(actually, this Court does not have associate judges, as every member of this Court is a United States District Judge)—that the exigencies of the public service require it, the Chief Judge or senior associate judge may in his discretion order an additional grand jury to be summoned.

In 1946 the Federal Rules of Criminal Procedure became law. They constitute a comprehensive procedural code for criminal cases in all United States District Courts. Their adoption was a far-reaching reform in the law, and an epoch making event in the history of adjective law in this country. Rule 6(a) provides that the Court shall order one or more grand juries to be summoned at such times as the public interest requires. This provision has been uniformly construed as meaning that any member of the Court may order a grand jury to be summoned. Subsection (g) of the same Rule provides that a grand jury shall serve until discharged by the Court, but that no grand jury may serve more than eighteen months.

The practice in this Court has been for a great many years that when an application is made by the Government for the impaneling of what may be informally known as a special grand jury,—because the word "special" is not a word of art, —it is ordinarily submitted to the judge presiding in Criminal Court Number 1. It must be borne in mind that this Court is a multiple-judge court consisting of fifteen judges, that at all times several of them are assigned to hold criminal courts, and that Criminal Court Number 1 supervises the grand jury. The grand jury that returned the indictment in this case was summoned by the judge presiding in Criminal Court Number 1 at the time, and not by the Chief Judge. It

is claimed that since the Chief Judge did not summon it, the grand jury was illegally convened.

In 1963, as heretofore stated, the judicial part of the Code of Laws of the District of Columbia was revised, recodified, and reenacted. Section 11–2306 is substantially a reenactment of the earlier provisions that had been in existence long prior to the promulgation of the Federal Rules of Criminal Procedure. It provides that additional grand juries may be summoned by the Chief Judge or in his absence by the presiding judge. The Congressional Committee Reports concerning the 1963 revision, indicate clearly that the Congress did not intend to make any changes in the law. Some of the phraseology was simplified and condensed and some of the section numbers were either combined or changed. The revision was largely of a purely textual nature.

■ It is a well recognized principle of statutory construction, which the Court deems applicable to the case at bar, that insofar as a later law is merely a reenactment of an earlier statute, it will not repeal an intermediate Act that qualifies or limits the prior one. Such an intermediate Act will be deemed to remain in force, and will be construed as qualifying or modifying the new Act in the same manner as it did the earlier law.

This principle was recognized and approved by the United States Court of Appeals for the Fourth Circuit in an opinion written by Judge Parker in George v. City of Asheville, N. C., 80 F.2d 50, 56, 103 A.L.R. 568. Numerous State cases have frequently applied and approved this doctrine. Among them are decisions of the Supreme Court of Pennsylvania In re Ferguson's Estate, 325 P. 34, 189 A. 289, and Petition of Indiana County, 360 Pa. 244, 62 A.2d 3, 5; and a decision of the Supreme Court of Minnesota in State ex rel. Village of Buhl v. Borgen, 231 Minn. 317, 43 N.W.2d 95.

■■ In the instant case, the Federal Rules of Criminal Procedure having changed prior law—and it must be remembered that these Rules have the effect of a statute—they will not be deemed to have been amended by a reenactment of the prior code, even though in a revised form.

This conclusion is supported in part by the fact that actually it is impossible to comply with the directions of the reenacted section, because it refers to "terms" of court. Shortly prior to the effective date of the reenactment, Congress abolished "terms" of Court.

We often speak of the intent of Congress in construing statutes. The words "intent of Congress" constitute an elusive phrase. In connection with major legislation discussed in full in Committee Reports and debated on the floor of one or both Houses, the resulting measure does embody the actual intent of the Members of the Congress. So, too, as concerns minor measures that have been studied by Committees and the purpose of which is defined in the Committee Reports, it may be said that those few Members who actually worked on the proposals represent the majority of the membership and, therefore, the intent of Congress is a realistic concept and is readily ascertainable. The situation is somewhat different when we deal with a codification or reenactment of a prior code. In such an instance, Members of Congress must rely very largely on the work of the staff, most of which are highly efficient and conscientious. In such revisions errors may creep in, however. The term "intent of Congress" as applied to such an enactment becomes very much attenuated. This is not said with any disrespect or disparagement of the legislative branch of the Government. On the contrary, it would be impossible for the Congress to operate effectively in any different manner.

■■ The Court, therefore, reaches the conclusion that the Federal Rules of Criminal Procedure must prevail over

the provisions of the reenacted local code, insofar as they cover the same ground. Under the Federal Rules of Criminal Procedure any judge of a District Court is empowered to summon a grand jury. The law no longer distinguishes, as has already been stated, between regular, additional, or special grand juries. The word "special" is no longer used in any technical sense.

 There is another point that must be considered, namely, that the methods of issuing orders for the summoning of a grand jury and similar provisions, are intramural internal regulations for the benefit of the Court and in the interest of efficiency in the transaction of public business. They are not intended as limitations on the authority of the grand jury, and they are not jurisdictional in any respect. This conclusion has been reached in a number of cases, among them a decision of the Fourth Circuit in Breese v. United States, 203 F. 824.

The opinion of another member of this Court, Judge Youngdahl, who arrived at an opposite result in United States v. Tiernan, has been carefully considered. Naturally, it would be preferable to follow a ruling made by a colleague. Any other course under ordinary circumstances is detrimental to orderly procedure. There are occasions, however, and this is not the first one, on which judges of this Court have expressed different views on some important subject. The point presented here, although a mere technicality, is important in the sense that it may affect the validity of a number of indictments. Therefore, with due deference and respect for my brother Youngdahl, I feel impelled to reach a different conclusion.

 Accordingly, the Court concludes that any United States District Judge is authorized to order that a grand jury be summoned in his district and that, therefore, the Grand Jury that returned the indictment in this case was legally summoned. The motion to dismiss the indictment is denied.