**UNITED STATES of America, Appellant,**

v.

**WALLACE & TIERNAN, INC., Robert T. Conner, Charles E. Hough, Appellees.**

**No. 19154.**

United States Court of Appeals District of Columbia Circuit.

Argued April 2, 1965.

Decided June 23, 1965.

Mr. David C. Acheson, U. S. Atty., with whom Messrs. Frank Q. Nebeker, Asst. U. S. Atty., and James W. Knapp, Atty., Dept. of Justice, were on the brief, for appellant. Messrs. John A. Terry and Jerome Nelson, Asst. U. S. Attys., also entered appearances for appellant.

Mr. Frederick B. Lacey, Washington, D. C., with whom Messrs. Harry Tyson Carter and Jerome K. Kuykendall, Washington, D. C., were on the brief, for appellees Wallace & Tiernan and Charles E. Hough.

Mr. B. L. Colton, Jr., Washington, D. C., for appellee Conner. Mr. Nicholas J. Chase, Washington, D. C., also entered an appearance for appellee Conner.

Before DANAHER, BURGER and MCGOWAN, Circuit Judges.

## PER CURIAM.

Appellees were indicted for violations of 18 U.S.C. § 1001.[1] Following their arraignment, at which they entered pleas of not guilty, appellees sought to have the indictment dismissed on the ground, among others, that the grand jury that returned it had not been convened in compliance with Section 2306 of Title 11 of the District of Columbia Code (Supp. IV, 1965) and that, therefore, its actions were a nullity The District Court granted their motions and dismissed the indictment on the theory that the grand jury had not been properly summoned. 234 F.Supp. 780 (D.D.C.1964). The United States then filed this appeal. We think the District Court erred in dismissing the indictment, and we reverse and remand with instructions to order its reinstatement.

I

It has long been the custom in the District of Columbia for the district judge presiding over Criminal Court No. 1 to be charged with the responsibility of summoning grand juries and discharging them upon the completion of their period of service. In April of 1964, District Judge (now Circuit Judge) Tamm was presiding over Criminal Court No. 1 pursuant to the order of the Chief Judge of the District Court. He received a letter from the United States Attorney, advising him that an additional grand jury was "necessary and in the public interest,", and requesting that an additional grand jury be summoned "pursuant to Rule 6(a) of the Federal Rules of Criminal Procedure." Accordingly, on May 1, 1964, Judge Tamm directed that an additional grand jury be summoned, and on May 19 the grand jury that returned the indictment here in dispute was impaneled and sworn. Appellees at no point have questioned the necessity of this grand jury to handle the pending public business, nor have they attacked the qualifications of its members, singly or as a group, or the propriety of its proceedings. Their sole claim was, and is, that 11 D.C.Code § 2306(a) (set out p. 224 *infra*) gives only the Chief Judge of the District Court, or the judge pre-

---

1. 18 U.S.C. § 1001 provides:

Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

siding in his absence,[2] the power to summon an additional grand jury. Thus, they say, Judge Tamm, notwithstanding the District Court's customary practice, lacked authority to act upon the U. S. Attorney's request, and, therefore, the grand jury summoned at his direction was unlawfully constituted and incapable of returning a valid indictment.

The United States contends that Section 2306, despite its appearance in the recodification of Title 11, is inconsistent with, and therefore superseded by, Rule 6(a) of the Federal Rules of Criminal Procedure by virtue of the provision in the rules enabling legislation that laws in conflict with any rule shall be of no further force and effect. See 18 U.S.C. § 3771. Alternatively, the Government argues that the provisions of Section 2306 are directory only, and that, since failure precisely to comply with their terms has not prejudiced appellees, the indictment should not have been dismissed.

Section 2306 of Title 11 is the refurbished successor to 11 D.C.Code § 1408 (1961), which provided as follows:

Whenever the United States attorney for the District of Columbia shall certify in writing to the chief judge of the United States District Court for said District, or, in his absence, to the senior associate judge of said court, that the exigencies of the public service require it, said chief judge or senior associate judge may, in his discretion, order an additional grand jury summoned, which additional grand jury shall be drawn

at such time as he may designate in the manner provided by law for the drawing of grand jurors in the District of Columbia, and unless sooner discharged by order of said chief judge, or, in his absence, senior associate judge, said additional grand jury shall serve during and until the end of the term in and for which it shall have been drawn.

This section was enacted by the Congress in 1922, at the instance of the Attorney General, to enable the Department of Justice to handle the flood of post-war investigations into war frauds.[3] Rule 6(a) of the Federal Criminal Rules, which became effective September 1, 1945, states in part:

*The court* shall order one or more grand juries to be summoned at such times as the public interest requires. [Emphasis added.] [4]

Appellees do not dispute that, to the extent Rule 6 was inconsistent with 11 D.C.Code § 1408, the provisions of the former governed the summoning of grand juries in the District of Columbia after 1945—at least until the revision and recodification of Title 11 in 1963.

Section 2306(a) is simply a consolidation of several sections of old Title 11, including former Section 1408:

If the United States attorney for the District of Columbia certifies in writing to the chief judge of the District Court, or in his absence, to the presiding judge, that the exigencies of the public service require it, the judge may, in his discretion, order

2. The United States has not pressed in this court its argument that Judge Tamm was the "presiding judge" in the Chief Judge's absence for purposes of Section 2306. Judge Tamm, though a District Judge of long service, was not "next in precedence" to the Chief Judge, as 28 U.S.C. § 136 (e) specifies, nor was the Chief Judge of the District Court absent at the time the grand jury was summoned. See note 5 *infra* and accompanying text.

3. See H.R.REP. No. 943, 67th Cong., 2d Sess. (1922); 62 CONG.REC. 5932, 6998–7001 (1922).

4. Other paragraphs of Rule 6 likewise refer simply to "the court." Thus 6(c) provides that "the court" shall appoint the foreman and deputy foreman; 6(g), that the grand jury shall serve until discharged "by the court," but no longer than eighteen months; 6(g), again, that "the court" can excuse a juror and impanel another in his place. Paragraph (f) specifies that indictments shall be returned "to a judge in open court." The Rule, in short, does not appear to recognize differences among District Judges in respect of their authority over grand jury proceedings.

an additional grand jury summoned, which shall be drawn at such time as he designates. Unless sooner discharged by order of the chief judge, or, in his absence, the presiding judge, the additional grand jury shall serve until the end of the term in and for which it is drawn.

The only significant change in the language of Section 1408 was the substitution in two places of "presiding judge" for the term "senior associate judge" to conform the new section to 28 U.S.C. § 136.[5] It would appear likely that the revisers of Title 11 did not regard Section 1408 as having been superseded by Rule 6, for they disclaimed any purpose to effect changes in substantive law; the recodification was intended only "to put that law in a form that will be more useful and understandable." S.REP. No. 743, 88th Cong., 1st Sess. 4 (1963).

The United States argues that Rule 6(a) was, and is, inconsistent with the provisions of Section 1408, for it provided for the summoning of grand juries, both original and special, by "the court," without qualification. Since every district judge on a multi-judge court is equal in authority unless otherwise provided, see, e. g., Tanner Motor Livery, Ltd. v. Avis, Inc., 316 F.2d 804, 809 (9th Cir.), cert. denied, 375 U.S. 821, 84 S.Ct. 59, 11 L.Ed. 55 (1963), its argument runs, any member of the District Court has the power to summon a grand jury upon a proper request from the U. S. Attorney. Such has been the general practice throughout the other district courts in the country, both before and after the promulgation of Rule 6.

▮ The language of Rule 6 is certainly susceptible of the interpretation advanced by the United States, and

there is no doubt that it, like other Federal Rules, applies with equal force in the District Court for the District of Columbia. It is significant, moreover, that the judges of the District Court appear to have regarded Section 1408 as superseded by Rule 6, and that the judge whose decision is here on appeal conceded that "between 1946 and 1964, *any judge on the district court* could have summoned an additional grand jury upon a proper showing * * *." 234 F. Supp. at 784. (Emphasis added.)

A more difficult question is the effect of Congress' retention of Section 1408's requirements in the revision of Title 11. The United States relies on what it terms the "well-settled rule of construction" that "where, as here, there has been an intermediate act which qualifies or limits an earlier one, a reenactment of the earlier statute will not repeal the intermediate act, which will be deemed to remain in force and so modifying or qualifying the new act in the same manner as it did the first." Brief for Appellant, at p. 9. The Government emphasizes the disclaimers, which appear in the reports of both the Senate and the House Committees, of any purpose to change substantive law in the recodification of Title 11 as indicating an absence of congressional intention to invalidate or modify what had become the invariable practice of the District Court in the summoning of grand juries. It ascribes the "revival" of old Section 1408 in new Section 2306 to the oversight of the revisers in failing to recognize that Section 1408 had long since been, in effect, repealed.[6] This reasoning has been expressly accepted by at least one member of the District Court. See United States v. Brown, 36 F.R.D. 204 (D.D.C.1964).

---

5. See H.R.REP. No. 377, 88th Cong., 1st Sess. A52–53 (1963); S.REP. No. 743, 88th Cong., 1st Sess. 60–61 (1963).

6. The Government also points out that Section 2306 continues Section 1408's reference to terms of the District Court, which were abolished prior to the effective date of the recodification of Title 11.

Rule 6, contrarily, contains no mention of this outmoded concept, but limits the period of jury service to eighteen months. Thus, the Government contends, it cannot be argued that the revisers successfully weeded out every obsolete provision in the former law, or that everything which remains must unquestionably be complied with to the letter.

And three other district judges have refused to dismiss indictments rendered by the same grand jury and attacked on the same ground as now raised by appellees.

██ We find the Government's argument convincing. Whatever had been the practice in the District of Columbia prior to the promulgation of the Federal Rules of Criminal Procedure, Rule 6 seems clearly to have empowered any district judge to summon a grand jury thereafter. Certainly this was the understanding of the members of the District Court, as evidenced by their practice from that time on. There can be no doubt that Rule 6 was intended to govern procedures in the District of Columbia; one of the central purposes of the Rules was to make uniform the practices of all the district courts. And Section 3771 of Title 18 of the United States Code and its predecessor, 54 Stat. 688 (1940), make explicit Congress' intention that the Rules should supersede "all laws in conflict." Thus, it would appear, Rule 6(a) in effect repealed Section 1408. The effectiveness of this repeal is not diluted by the fact that the issue has not previously been decided; Section 1408 ceased to be the law immediately upon the adoption of the Federal Rules.

██ The reappearance of the language of Section 1408 in Section 2306 of revised Title 11 does not, in our view, reflect any congressional purpose to revive the requirements of the old provision. We have, first, the statement of the revisers, uncontradicted by any committee or member of Congress, that the recodification did not change substantive law in any way. If Section 2306 was designed to require a return to the old law on the summoning of grand juries, as appellees seem to argue, it was incumbent upon the revisers to apprise Congress of this fact, and there is not the slightest evidence that they did so. Nor is there any suggestion in the legislative history that Congress either perceived or approved such a change. It is com-

mon knowledge that the members of Congress, in such matters as the revision and recodification of earlier legislation, must of necessity rely to a considerable extent on the work of their staff, into which some errors will inevitably creep. Quite obviously the revisers failed to discern that Section 1408 was no longer the law when they included its language in Section 2306. In this setting, we need not and ought not translate what is essentially a clerical oversight into a congressional intention to resurrect a long-since abandoned procedure for the summoning of additional grand juries in the District of Columbia.

## II

There is an additional basis for our conclusion that the indictment in this case should not have been dismissed. Appellees, in our view, have failed to show that they have been deprived of any substantial right or prejudiced in any significant interest by any failure to comply with the precise language of Section 2306.

Assuming, for purposes of argument, that Section 1408 had always been, or by virtue of Section 2306 had again become, the applicable law in the District of Columbia, we do not believe that it was enacted to protect those who are charged by the grand jury, or that, in the absence of a showing of any prejudice, failure to conform to its letter was intended to expunge the proceedings of the grand jury from the public records. As we have indicated, Section 1408 was originally enacted in order to facilitate the work of the Attorney General by making it possible for more than one grand jury to be sitting at a time. The history of this legislation casts very little light on Congress' purpose in restricting the power to summon an additional grand jury to the Chief Judge of the District Court. There seems to have been some concern among the members of Congress that ultimate control over the summoning of grand juries should not come to rest in the hands of the United States Attorney; Section 1408 made clear that

the matter of calling an additional grand jury rested *in the discretion* of the Chief Judge.[7] The decision to confine this authority to the Chief Judge alone, however, is unexplained. It may have been intended to prevent the summoning of additional grand juries unnecessarily by vesting authority in only one judge, who presumably would be in closest touch with the needs of the prosecutor and the demands on the grand jury already sitting. Such an intention is consistent with what appears to have been a congressional purpose to limit the demands on potential grand jurors and hold down the cost of grand jury service to the taxpayers. But, in any event, the decision does not appear to have been prompted by a desire to protect those whose activities the grand jury was summoned to investigate, at least absent a showing of prejudice.

■■ We are of the opinion, therefore, that "in enacting this statute Congress had no intent to legislate as to the validity of indictments." Breese v. United States, 203 F. 824, 828 (4th Cir. 1913). And see Nolan v. United States, 163 F.2d 768 (8th Cir. 1947), cert. denied, 333 U.S. 846, 68 S.Ct. 649, 92 L.Ed. 1130 (1948); Morris v. United States, 128 F.2d 912 (5th Cir.), cert. denied *sub nom.* Lacy v. United States, 317 U.S. 661, 60 S.Ct. 60 (1942); United States v. Brown, 36 F.R.D. 204, 207 (D.D.C.1964). In the *Breese* case, the court refused to quash an indictment on the ground that the district court had failed to enter an order directing the issuance of a writ of *venire facias* to summon the grand jury, even though statute provided that "[n]o grand jury shall be summoned * * * unless * * * the judge * * * orders a venire to issue therefor." 203 F. at 828.[8] The principle underlying these and many other decisions is not difficult to discern: Irregularities in the summoning and impanelling of a grand jury will not automatically invalidate the indictments it returns, in the absence of some showing of prejudice or possibility of prejudice to the accused. See, *e. g.,* Romney v. United States, 83 U.S.App.D.C. 150, 156, 167 F.2d 521, 527, cert. denied, 334 U.S. 847, 68 S.Ct. 1512, 92 L.Ed. 1771 (1948); Medley v. United States, 81 U.S.App.D.C. 85, 155 F.2d 857, cert. denied, 328 U.S. 873, 66 S.Ct. 1377, 90 L.Ed. 1642 (1946); United States v. Brookman, 1 F.2d 528 (D.Minn.1924).[9] Certainly this is true

---

7. See 62 CONG.REC. 6998 (1922). Appellees point out that, at the time of the recodification of Title II, the Bar Association of the District of Columbia argued against any omission of this proviso in Section 2306, this by way of suggesting that the reenactment of Section 1408 was not accidental. It is worth noting, however, that appellees were not exposed to this apprehended risk of prosecutorial abuse by the failure to conform to the precise language of Section 2306. Even under the practice of the District Court, the final decision to summon an additional grand jury is made, not by the prosecutor, but by the court. See Morris v. United States, 128 F.2d 912 (5th Cir.), cert. denied *sub nom.* Lacy v. United States, 317 U.S. 661, 63 S.Ct. 60, 87 L.Ed. 531 (1942).

8. The Eighth Circuit's decision in *Nolan* rejected the appellant's similar claim that the judge's failure to sign the order summoning the grand jury invalidated his subsequent indictment. In *Morris*, the Fifth Circuit sustained the practice "so general over the United States that we take judicial knowledge of it" of convening simultaneously grand juries in several divisions of the same district, though no statute authorized it. And in *dictum* the court implied that it would approve the summoning of more than one grand jury in a single division, "for we think the statute as to the number of grand juries permissible in the different situations named in it, was only directory and not intended to impose mandatory restrictions on the judge." 128 F.2d at 915–916.

9. Neither Clark v. United States, 19 App. D.C. 295 (1902), nor United States v. Carper, 116 F.Supp. 817 (D.D.C.1953), is inconsistent with this principle. In the former case, the grand jury was summoned on December 23, 1901, in accordance with the law then in force, and ordered to appear on January 7, 1902. A law revising the qualifications for grand jurors took effect on January 1, 1902, but the jurors summoned were examined respecting only their qualifications under the prior law, which did not require, as did the new, that they "be able to read and write and to understand the English

when the statute whose precise requirements have been overlooked is one intended to protect the public treasury and minimize the demands of jury service, rather than safeguard the rights of the accused. See People v. Lieber, 357 Ill. 423, 192 N.E. 331 (1934).

■ Appellees have never contended that they were in any way prejudiced because a district judge other than the Chief Judge of the District Court, or the district judge presiding in his absence, summoned the grand jury. No suggestion has been made that the panel of jurors was not representative, or that any of the jurors was not legally qualified, or that the grand jury proceedings were in any other respect improper. Nor have appellees even hinted that the failure to comply with Section 2306 carried with it any risks greater than or different from those they would have faced before a grand jury summoned in accordance with its provisions. Under these circumstances, even if Section 2306 were the law, we think it would be to elevate form over substance to hold that the indictment found against them is without legal effect.

The judgment is, accordingly, reversed; and the case is remanded with instructions to reinstate the indictment.

It is so ordered.

language." Moreover, the jury commissioners who summoned the jurors were not competent to act under the new law. The court found that the provisions of the old law had expired on January 1, and therefore sustained a plea in abatement to an indictment returned by the grand jury. The Government apparently did not argue that no prejudice to the appellant had been shown, perhaps because the risk of prejudice at the hands of jurors who had not been tested on their ability to understand the language in which the proceedings were conducted was patent.

In the *Carper* case, the District Court sustained a challenge to an indictment on the ground that unauthorized persons —United States deputy marshals—had been present in the grand jury room during the defendant's testimony. The court rejected the Government's argument that he had failed to show actual prejudice. "It seems to this Court that at most the defendant need show only probable prejudice to the grand jury system by the violation." 116 F.Supp. at 820. As the court pointed out, it would have been virtually impossible for the defendant to show actual prejudice. The pyschological impact of the presence of a deputy marshal on the defendant would have been difficult to assess, though it would undoubtedly have existed. Finally, the court emphasized the necessity of preserving the traditional inviolate secrecy of grand jury proceedings, which rests upon a recognition of the risks of a contrary course.