**UNITED STATES of America,**
**Plaintiff-Appellee,**

**v.**

**Miguel CORONADO, Jr., Defendant-Appellant.**

**No. 28423**
**Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

May 4, 1970.

Ray Epps, Cutler & Epps, Houston, Tex., for appellant.

Anthony J. P. Farris, U. S. Atty., Houston, Tex., for appellee.

Before WISDOM, COLEMAN, and SIMPSON, Circuit Judges.

PER CURIAM:

We have concluded on the merits that oral argument is unnecessary in this case. Accordingly, we have directed the Clerk to place the case on the Summary Calendar and to notify the parties of this fact in writing. See Huth v. Southern Pacific Co., 5 Cir.1969, 417 F. 2d 526; Murphy v. Houma Well Service, 5 Cir.1969, 409 F.2d 804; 5th Cir. R. 18.

On this direct criminal appeal, Miguel Coronado, Jr. argues (1) that there was no probable cause for his warrantless arrest, (2) that the trial judge's comments to the jury prejudiced his right to a fair trial, and (3) that 21 U.S.C. § 174 is unconstitutional. We affirm.

February 11, 1969, Gilbert Lee, Senior Patrol Inspector, United States Border Patrol, received a telephone call from a confidential informer. The informer told Lee that he had been approached by a person hired by a heroin supplier to arrange for the transportation of a quantity of heroin from Mexico to Houston, Texas. Lee in turn relayed this information to Ramiro Villarreal, a United States Customs Agent. February 12, Lee and Villarreal met the informer who

had in his possession a package later identified as heroin. The informer stated that his instructions were to proceed to Houston, call a certain telephone number, and deliver the package to the person he had telephoned. Agent Villarreal then called the Houston office to inform the agents there of these developments.

Agent Villarreal and the informer arrived in Houston on February 13 and proceeded to the Customs Office where they made a duplicate package containing only a small quantity of heroin. While there, he learned that the telephone number the informer was to call was that of the defendant-appellant.

At 8:00 o'clock on the evening of February 13, the informer, from a telephone booth, called Coronado. After completing his conversation, the informer stated that Coronado would arrive in a yellow taxi cab, approximately two blocks from the telephone booth. Within minutes, a team of agents that had been stationed near the defendant-appellant's residence reported that Coronado had left his home and entered a yellow taxi cab, number 346. Shortly thereafter, that same taxi cab appeared at the designated meeting place. The person in the taxi opened the door and the informant with the duplicate package concealed in a newspaper went into the cab. Less than a minute later the informer left the taxi with only the newspaper in his possession.

The agents allowed the taxi to proceed for a few blocks, then stopped it and arrested Coronado. He was later indicted for violating 21 U.S.C. § 174 and 26 U.S.C. § 4704.

Coronado argues, on appeal as he did below, that the arresting officers did not have knowledge sufficient to amount to probable cause to believe that he had committed an offense and therefore the arrest and the search that followed were illegal.

This Court has recently stated

In applying the standard of probable cause we determine whether "[t]he arresting officers * * * possess knowledge of facts and circumstances gained from reasonably trustworthy sources of information sufficient to justify a man of reasonable caution and prudence in believing that the arrested person has committed or is committing an offense. Miller v. United States, 5 Cir.1966, 356 F.2d 63, 66, cert. denied, 384 U.S. 912, 86 S.Ct. 1357, 16 L.Ed.2d 365, Henry v. United States, 1959, 361 U.S. 98, 102, 80 S.Ct. 168, 4 L.Ed.2d 134, 138.

United States v. Trabucco, 5 Cir.1970, 424 F.2d 1311.

■ On the facts this case presents, the arresting officers could reasonably believe that Coronado was in the process of committing a narcotic violation. The realiability and trustworthiness of the informer were clearly established by the district court. United States v. Cabrera, 5 Cir. 1969, 417 F.2d 211.

■ Coronado's second point focuses on the district court's action in introducing three young men to the jury. It is argued that the judge's remarks concerning these three men prejudiced Coronado's case in that the comments impressed the jury with the district court's own belief that Coronado was not "one of the good young people [of] today".[1] This is an unwarranted inference. The

I. THE COURT:

Ladies and gentlemen, let me introduce another young friend of mine, Mr. Charles Jackson.

When Robert Kennedy was the Attorney-General, he started a program in the summer getting outstanding young men to work with the Department of Justice in the United States District Attorney's Office.

I had known Charles some time and he was an outstanding athlete and outstanding student.

He worked for us his last three summers in high school.

I have been an Air Force Reserve Officer for several years. I have been trying to get Charles in the Air Force Academy. He went to Colorado State. He got a football scholarship there on

young men were simply spectators at the trial. The remarks were not directed at Coronado and did not cast a shadow on Coronado's character. These were young men; Coronado was 42 years old. There was no necessary reflection on the defendant. Although we do not view with approval this casual conduct of the trial, we find no harmful error on the part of the district judge.

 Coronado's last argument that 21 U.S.C. § 174 is unconstitutional is foreclosed by the Supreme Court's decision in Turner v. United States, 1970, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 and this Court's decisions in United States v. Duke, 5 Cir. 1970, 423 F.2d 387; Jimenez v. United States, 5 Cir. 1970, 421 F.2d 1401.

The judgment of the district court is affirmed.

his football playing and academic record. He has just finished his first year of college.

Where are you working now, Charles?

MR. JACKSON:

Hughes Tool Company.

THE COURT:

He is an outstanding young man.

He is with these other two young men here who are close friends of mine. I didn't know I was going to see Charles today. He works at night.

I have been trying to write a letter to his football coach.

So all three of them can have lunch with me today.

Charles might want to stay and watch the trial today.

We hear so much about our young people having so much trouble. The fact of the matter is, we really have good young people today.