**UNITED STATES of America**

**v.**

**Michael HARLING, Appellant.**

**Nos. 23054, 23279.**

United States Court of Appeals,
District of Columbia Circuit.

Argued March 10, 1972.

Decided June 19, 1972.

Mr. James W. Respess, Washington, D. C., (appointed by this court), for appellant.

Mr. John S. Ransom, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty. at the time the brief was filed, and John A. Terry, Asst. U. S. Atty., were on the brief, for appellee. Mr. Harold H. Titus, Jr., U. S. Atty., also entered an appearance for appellee.

Before BAZELON, Chief Judge, and McGOWAN and LEVENTHAL, Circuit Judges.

McGOWAN, Circuit Judge:

In this appeal we are called upon to determine the validity of the presumptions in two federal narcotics statutes [1] in the context of a case where the direct evidence of appellant's involvement with narcotic drugs was severely limited in its scope.

The first statute, 21 U.S.C. § 174, subjects to imprisonment anyone who

fraudulently or knowingly imports or brings any narcotic drug into the United States . . ., or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported or brought into the United States contrary to law. . . .

and permits the jury to presume from mere possession of narcotic drugs that the possessor knew that the drugs were illegally imported. The second statute, 26 U.S.C. § 4704(a), makes it unlawful to

purchase, sell, dispense, or distribute narcotic drugs except in the original stamped package. . . .

and provides that

the absence of appropriate taxpaid stamps from narcotic drugs shall be prima facie evidence of a violation of this subsection by the person in whose possession the same may be found.

An analysis of the relevant Supreme Court decisions in light of the unusual circumstances of this case leads us to reverse the convictions under both statutes.

I.

On August 6, 1968, two men in an automobile delivered appellant, then nineteen years old, to the emergency ward of a hospital in the District of Columbia, informed an attendant that he was suffering from "too much drug," and left. Appellant was near death, and showed "no vital signs as regards respiration." Antidotes for heroin overdose were immediately administered by the doctor in charge, and appellant recovered. The doctor later testified that in the course of his treatment he was surprised to note that appellant "did not have the typical hardened veins and multiple puncture sites" characteristic of frequent narcotics users, and indeed could not find any puncture marks at all on appellant.

Shortly after appellant's admission to the emergency ward, several police officers arrived. The officers searched through his trousers, which had been placed on a nearby chair, in order to determine his identity; they found six packets of marijuana and three capsules of heroin. Appellant was subsequently indicted and tried under 21 U.S.C. § 174 and 26 U.S.C. § 4704(a). The Government's case consisted of the testimony as to the finding of the narcotics in appellant's possession, and the jury, after being instructed that it might infer guilt from the evidence of possession of narcotics, returned a verdict of guilty on both counts.

Appellant's testimony at the trial concerning the events preceding his delivery at the hospital was as follows: On the evening in question, he heard a party in progress in his vicinity and, although new to the neighborhood, went to the door and asked to join. He knew none of the people present, but was nevertheless invited in and offered some beer. Some time later, several youths offered him some marijuana cigarettes, which he accepted and smoked despite his alleged unfamiliarity with the nature of the substance. Still later, these same individuals asked appellant whether he would like to get "high all the way," and, although again allegedly ignorant of precisely what they were talking

1. Both have since been repealed by the Controlled Substances Act of 1970, Pub. L. 91–513, Title III, Oct. 27, 1970, 84 Stat. 1242.

about, he assented because he "was just trying to make friends and everything." The last thing appellant remembered was someone injecting a needle into his arm. He denied any knowledge of the marijuana and heroin found in his trousers pockets. In short, appellant placed before the jury the picture of a naive youth whose simple request for companionship in a strange neighborhood led him unwittingly to dangerous experimentation with drugs.

## II

While it may be that the jury was well within its province in discrediting appellant's version of what happened, the necessity remains for the Government to have adduced proof adequately supporting the jury's verdict. The questions before us are whether, on the prosecution's evidence, the jury could conclude beyond a reasonable doubt that appellant (1) knew, for the purpose of Section 174, that the drugs he possessed were illegally imported into the United States, and (2) purchased those drugs, as contemplated by Section 4704(a), rather than acquired them by gift, theft, or otherwise.

### A. *Section 174.*

With respect to the first of these questions, the Supreme Court in Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), struck down the presumption of knowledge of illegal importation that 21 U.S.C. § 176(a) applied to possessors of marijuana.[2] The decision rests principally on two grounds, namely, (1) users of marijuana are by and large only occasional users, and (2) a substantial amount of marijuana is produced in the United States. Invoking the rule that a statutory presumption is constitutionally valid only if the fact presumed "is more likely than not" to follow from the facts proven, the

Court concluded that under these circumstances it was irrational to infer that a possessor of marijuana must be taken as knowing that what he possessed was illegally imported.

In Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970), however, the Court upheld the presumption of § 174, at least as applied in that case to an individual found in possession of 275 bags of heroin. The basis for this holding was that the amount of heroin either produced in the United States or stolen in the United States after legal importation is so negligible that it could be stated with assurance that "heroin possessed in this country is a smuggled drug." 396 U.S. at 416, 90 S.Ct. at 652. The Court conceded that the validity of the presumption that heroin found in the United States was legally imported does not necessarily mean that its possessor *knew* that it was illegally imported, but concluded that in the case of an individual found in possession of 275 bags (worth, at the Court's estimation, around $5.00 per bag) the jury could properly infer that he was a dealer, and that dealers know that the source of their merchandise is outside the country. What the Court did not resolve is the question now before us, i. e., the validity of the presumption where there is nothing to suggest that the defendant is more than an "occasional user," or, indeed, more than a one-time user.

Our reading of *Turner* leads us to the conclusion that the Court implicitly recognized that there may be some possessors of heroin against whom the presumption could not validly operate. In this regard, certain passages from *Turner* are instructive:

It may be that the ordinary jury would not always know that heroin illegally circulating in this country is not manufactured here. *But Turner*

2. Appellant was also convicted under 26 U.S.C. § 4744(a) for possession of marijuana without having paid the transfer tax imposed by 26 U.S.C. § 4741(a). This count of the indictment was dismis- sed by the trial court after the Supreme Court's decision in Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969).

*and others who sell or distribute heroin are in a class apart.* Such people have regular contact with a drug which they know cannot be legally bought or sold; their livelihood depends on its availability; some of them have actually engaged in the smuggling process. The price, supply, and quality vary widely; the market fluctuates with the ability of smugglers to outwit customs and narcotics agents at home and abroad. The facts concerning heroin are available from many sources, frequently in the popular media. "Common sense" tells us that *those who traffic in* heroin will inevitably become aware that the product they deal in is smuggled, unless they practice a studied ignorance to which they are not entitled. (Emphasis supplied, footnotes and citations omitted.) 396 U.S. at 416–417, 90 S.Ct. at 652.

In a footnote, the Court added:

Such a conclusion is also justified with regard to those users and addicts *who frequently purchase supplies of heroin on the retail market.* Such persons are of course aware of the variations in price and availability of the drug and of the fact that the success of anti-smuggling efforts of law enforcement officials affects the supply of heroin on the market. (Emphasis added), 396 U.S. at 417, n. 33, 90 S.Ct. at 653.

The Court further noted that generally the presumption would not present a problem:

Though the federal narcotics laws are in terms applicable to most possessors of illicit drugs regardless of whether the possessor is a user or a dealer, the enforcement efforts of the Bureau of Narcotics and Dangerous Drugs are directed to the development of evidence against "major sources of supply, wholesale peddlers, interstate and international violators." (citations omitted) The undisputed evidence that Turner possessed 275 glassine bags of heroin clearly shows *that Turner was more than a mere user of heroin and was engaged in the distribution of the drug.* (Emphasis added). 396 U.S. 416–417, n. 30, 90 S.Ct. at 652.

These expressions, we think, quite clearly indicate that, in the Supreme Court's view, the presumption of § 174 would not be valid in cases where the Government has presented no evidence suggesting that the defendant was either a dealer in, or a frequent user of, heroin. That is the case before us.

In contrast to the 275 bags of heroin found in Turner's possession, appellant was found with three capsules, which retail roughly at one dollar each. Furthermore, the physician who treated appellant testified that there were no puncture marks whatsoever on appellant, in contrast to the hardened veins and multiple puncture sites characteristic of most narcotic users the doctor had seen. Finally, appellant was obviously suffering from a severe reaction to the drug, and, while this fact is not conclusive of his inexperience with drugs, it does at least point in that direction. In any event, none of the evidence remotely indicates that appellant was either a dealer in heroin or a frequent user of it.[3]

In reversing appellant's conviction under § 174, we recognize that in all post-*Turner* cases under that statute, this and other circuits have upheld the validity of the presumption. In the vast ma-

---

3. The Government points to the fact that appellant was also found with six packets of marijuana as indicative of his familiarity with drugs in general, and, presumably, the extraterritorial origin of heroin in particular. We note, however, that in *Leary* the Supreme Court ruled that one could not presume knowledge of illegal importation of marijuana on the part of a possessor regardless of how much he possesses; and we see no basis for imputing knowledge of heroin's source to a possessor of marijuana. And while appellant's possession of both marijuana and heroin may cast doubt upon the reliability of his own testimony, it does not suggest that he was a dealer in or frequent user of heroin.

jority of the cases we have surveyed, however, there was direct or circumstantial evidence that the accused was dealing in the drug,[4] bearing out the Supreme Court's assumption in *Turner* that the policy of the Bureau of Narcotics and Dangerous Drugs is to prosecute major suppliers and peddlers. In some cases, the opinions do not indicate the amount of narcotics involved,[5] and, in a very few, they indicate that the amount was small.[6] In none of these latter cases, however, does the court discuss this problem, possibly because it was not raised or because other evidence in the record indicated peddling or frequent use. We cannot assume, therefore, that those cases have decided *sub silentio* the issue here.

In the few cases where the problem has been recognized and discussed, the courts have indicated, at least in *dictum* their view that the presumption of § 174 could not operate absent evidence suggesting dealing or frequent use. Thus, in United States v. Martin, 428 F.2d 1140 (3rd Cir. 1970), the defendant argued that since he was found in possession of heroin sufficient only for his daily use, the holding of *Turner* would not apply. Citing footnote 33 of the *Turner* opinion, *supra*, the Third Circuit concluded that

> Martin's contention in this regard is therefore rejected, since the evidence

mentioned indicates that he was at least a frequent user. *Id.*, at 1142

The Second Circuit in United States v. Calabro, 449 F.2d 885, 891 (2d Cir. 1971), rejected a similar challenge to the § 174 presumption on the grounds that

> [The defendant's] entire course of conduct during the conspiracy impels the conclusion that he was intimately acquainted with the details of the mutual venture in selling, concealing, and transporting narcotics. From this, the jury reasonably could have concluded that [he] knew the heroin to have been illegally imported.

*See also* United States v. Walker, 146 U.S.App.D.C. 95, 449 F.2d 1171 (1971); Comment—Statutory Presumptions—Turner v. United States, 4 Suffolk L. Rev. 929, 940–41 (1970).

▮ The record before us may, thus, be unusual, but it is nonethless compelling. The prosecution's case is devoid of any significant indication that appellant is either a trafficker in narcotics or a frequent user thereof. The inference permitted by the presumption was essential to the Government's success. With it removed, as we think it must be here, the verdict lacks the requisite degree of evidentiary support.

*B.   Section 4704(a).*

▮ The validity, in the special context of this record, of the presump-

4.  *See, e. g.*, United States v. Calabro, 449 F.2d 885 (2d Cir. 1971); United States v. Crespo, 422 F.2d 718 (2d Cir.) cert. denied, 398 U.S. 914, 90 S.Ct. 1716, 26 L.Ed.2d 77 (1970); United States v. Clark, 425 F.2d 827 (3rd Cir.) cert. denied, 400 U.S. 820, 91 S.Ct. 38, 27 L.Ed. 2d 48 (1970); United States v. Hernandez, 441 F.2d 157 (5th Cir. 1971); United States v. Coronado, 426 F.2d 927 (5th Cir. 1970); United States v. Curbelo, 423 F.2d 1204 (5th Cir. 1970); United States v. Martinez, 428 F.2d 86 (6th Cir. 1970), cert. denied, 400 U.S. 881, 91 S.Ct. 125, 27 L.Ed.2d 119; Napue v. United States, 432 F.2d 1230 (7th Cir. 1970); United States v. Holmes, 452 F.2d 249 (7th Cir. 1971); United States v. McKnight, 427 F.2d 75 (7th Cir. 1970); United States v. Whitlock, 442 F.2d 1061 (8th Cir. 1971); United States v. Archuleta, 446 F.2d 518

(9th Cir. 1971); United States v. Sanchez, 440 F.2d 649 (9th Cir. 1971); United States v. Fraser, 431 F.2d 876 (9th Cir. 1970); Burgess v. United States, 142 U.S.App.D.C. 198, 440 F.2d 226 (1970); United States v. Williams, 143 U.S.App.D.C. 16, 442 F.2d 738 (1970).

5.  United States v. Haywood, 146 U.S.App. D.C. 401, 452 F.2d 1330 (1971); United States v. Collins, 142 U.S.App.D.C. 100, 439 F.2d 610 (1971); Burris v. United States, 430 F.2d 399 (7th Cir. 1970), cert. denied, 401 U.S. 921, 91 S.Ct. 909, 27 L.Ed.2d 824 (1971); United States v. Nero, 433 F.2d 350 (9th Cir. 1970).

6.  United States v. Cox, 139 U.S.App.D.C. 264, 432 F.2d 1326 (1970); United States v. Black, 422 F.2d 398 (4th Cir. 1970).

tion in § 4704(a) presents a more difficult question. The precise issue here is whether the jury could reasonably infer from appellant's possession of three capsules of heroin and six packets of marijuana that he did "purchase, sell, dispense, or distribute" the narcotic drug (*i.e.*, the heroin) not in its original stamped package.

We may exclude from consideration the possibility that appellant sold, dispensed, or distributed the narcotic drugs in his possession. While the Supreme Court in *Turner* upheld the presumption of selling, dispensing, or distributing as it applied to the defendant there, the Court was careful to note that the

> evidence, without more, solidly established that Turner's heroin was packaged to supply individual demands and was in the process of being distributed. . . . 396 U.S. at 420, 90 S.Ct. at 654.

Clearly the same cannot be said of appellant's three unpackaged · capsules. Neither do we need to consider the possibility that appellant obtained his drugs in the original stamped package, since the Court unequivocally held in *Turner* that there can be "no reasonable doubt that one who possesses heroin did not obtain it from a stamped package." 396 U.S. at 422, 90 S.Ct. at 655. We are left then with the question of whether the evidence of possession in this case affords reasonable support for an inference that appellant *purchased* his three capsules rather than acquired them in some other fashion.

On this question, we must take account of the following language of the Court in *Turner*, wherein it concluded that, even if the evidence was insuffi-

cient to support the presumption of sale or distribution, it would nevertheless support the inference that Turner purchased his heroin:

> Those possessing heroin have secured it from some source . . . Of the various ways of acquiring heroin, *e.g.*, by gift, theft, bailment or purchase, only purchasing is proscribed by the section. Since heroin is a high-priced product, it would be very unreasonable to assume that any sizeable number of possessors have not paid for it, one way or another. *Perhaps a few acquire it by gift and some heroin undoubtedly is stolen, but most users may be presumed to purchase what they use.* (emphasis supplied) 396 U. S. at 421–422, 90 S.Ct. at 655, 24 L. Ed. 2d 610.[7]

Preliminarily, it may be noted that, looking to the Government's evidence alone in this record, it is doubtful that appellant can be assumed to be one of those "users" referred to in the concluding clause of the foregoing quotation. That evidence is consistent with the possibility that appellant, who almost died in the process, was trying heroin for the first time. Of course, anyone who takes heroin once can technically be said to be a "user." But it seems likely that the Supreme Court was not, in this context, using the word in that restricted sense. In view of the fact—or at least the common belief—that dealers in heroin not infrequently cultivate future purchasers by the distribution of free samples, it is at least as likely as not that appellant was one of those few possessors who acquire the drug by gift—a contingency expressly contemplated by the Supreme Court.[8]

---

7. On this point, Justice Marshall, concurring in the result, disagreed that the jury could reasonably presume acquisition by purchase even as to one found with a large quantity of heroin. 396 U.S. at 424–425, 90 S.Ct. 642.

    It is interesting to note that the Court in *Turner* concluded that the § 4704 (a) presumption of purchase as to a large amount of cocaine was invalid, on the grounds that a significant amount

of cocaine is legally imported or manufactured in this country, and that significant amounts of cocaine are stolen from legal channels. Why the Court assumed that it was more probable that cocaine in one's possession was stolen from legal channels than that heroin in one possession was stolen from illegal channels is not clear.

8. Moreover, there is considerable support in the literature of drug abuse for the

The Government, however, points to the fact that appellant was found not only in possession of three capsules of heroin but also six packets of marijuana. It was at trial stipulated that the total value of all drugs found on appellant was thirty dollars. The prosecutor represented to the jurors that if they believed appellant's story that he did not purchase the drugs, they should acquit, but went on to argue the improbability of anyone giving away thirty dollars worth of drugs.

We do not agree, however, that the jury was warranted in presuming from possession of a valuable amount of marijuana and a relatively inexpensive amount of heroin that appellant purchased the heroin. In the first place, there is the possibility—never presented to the jury—that appellant purchased the marijuana but was given the small quantity of heroin, perhaps as an inducement to go on to better things. There is no reason to assume that the probability of this is any less than the probability that one found with only three capsules of heroin and no marijuana acquired the heroin by gift. While it is true that appellant denied purchase of either drug, we are not warranted in presuming that, if he lied as to the marijuana, he also lied as to the heroin. At the time of his offense, purchase and possession of marijuana was also a crime, and one for which he was indicted.

In the second place, while the prosecutor argued the improbability of appellant's receiving a valuable quantity of drugs by gift, the jury was instructed that it could presume purchase from the mere possession of the heroin alone, re-gardless of its quantity and of the presence of the marijuana. On this record, we—as was the jury—are left amidst a welter of speculative, but not implausible, possibilities. We do not think it consonant with due process of law that the jury should under these circumstances have been left with the easy way out afforded by the statutory presumption.[9]

Appellant's convictions under 21 U.S. C. § 174 and 26 U.S.C. § 4704(a) are reversed.

It is so ordered.

---

proposition that beginners typically receive their first dose of heroin from friends or acquaintances, rather than dealers in the drug. *See, e. g.,* W. Eldridge, Narcotics and the Law 29 (1962) ; The President's Advisory Commission on Narcotic and Drug Abuse, Final Report 4 (1963) ; Blum, Mind-Altering Drugs and Dangerous Behavior: Narcotics, in The President's Commission on Law Enforcement and the Administration Justice, Task

Force Report: Narcotics and Drug Abuse 52 (1967) ; Clausen, Social and Psychological Factors in Narcotics Addiction, 22 Law & Contemp. Prob. 39 (1957).

9. In light of our disposition, we find it unnecessary to reach appellant's additional claim that the seizure of the drugs at the hospital was in violation of his physician-patient privilege.