**UNITED STATES of America**

v.

**Richard VEREEN, Appellant.**

**No. 23173.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 13, 1970.

Decided May 13, 1970.

Mr. Walter S. Furlow, Jr., Washington, D. C. (appointed by this court) for appellant.

Mr. Terry Philip Segal, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., John A. Terry and James E. Kelley, Jr., Asst. U. S. Attys., were on the brief, for appellee.

Before FAHY, Senior Circuit Judge, McGOWAN and LEVENTHAL, Circuit Judges.

PER CURIAM:

Appellant was convicted in the District Court of housebreaking and robbery. 22 D.C.Code § 1801, 2901. He now urges error by the trial judge in (1) refusing to permit appellant's counsel to testify and (2) instructing the jury on flight.

On January 3, 1967, one Mason was robbed of $68.00 and a set of keys. It is undisputed that appellant rifled Mason's pockets while another, one "Big Red" Johnson, threatened Mason. Appellant's defense was coercion. He testified that Johnson induced him to go to Mason's room on the pretense of getting some paint.[1] Upon entering the apartment, Johnson, who was much larger than appellant or Mason and who had the reputation of being a bully, pulled a knife and threatened to kill appellant if he did not assist in the robbery. Appellant further testified that, after the robbery, Johnson forced appellant to give Johnson the money, and Johnson left the scene "half running." Appellant went nearby for coffee and returned within 30 minutes, intending, so he said, to see Mason. He was arrested in front of the scene of the crime.

At trial, Mason testified on cross-examination as to an interview conducted by appellant's appointed trial counsel:

[Defense Counsel]: Now, isn't it true, Mr. Mason, that at [the interview], you said that Red, Gregory Johnson, had pulled a knife on Richard Vereen and told him he would have to help Red rob you or he was going to cut up Richard Vereen?

[Mason]: Yes, he'll tell you the same thing, yes, sir.

However, on redirect, Mason recanted:

[Ass't, U. S. Att'y]: * * * At the time you and Vereen and Red were in that room, the three of you were in there, at 705 S. Street, during that time did Red ever threaten Vereen with a knife during that time?

A. No.

At the close of the Government's case, appellant moved for dismissal of the charges on the basis of the contradictory nature of Mason's testimony. After that motion was denied, defense counsel represented to the trial judge that Mason had freely told him, in a pretrial office interview, that Johnson had threatened appellant with a knife during the robbery, and that counsel felt obliged to testify as a witness to this effect.

The trial judge at first responded by noting that Mason's credibility had already been questioned by cross-examination, and also would be further undermined by appellant's testimony in his own defense. Finally, in response to defense counsel's formally stated request to testify and his offer to substitute as counsel an associate so that no trial delay would ensue, the court noted that such a course "would not be in the best form" and denied the motion to withdraw, apparently on the ground that "it is inappropriate for counsel to insert himself as a witness."[2] The court also appeared to reject defense counsel's claim of surprise in justification of his request to testify. Counsel stated that he had not expected the witness to change his story. The court noted only that the witness appeared to be confused.

It is unfortunate that appellant's only meaningful source for impeaching Mason was the testimony of his trial counsel, who apparently interviewed Mason without other persons present. A committee of the ABA Project on Minimum Standards for Criminal Justice recently recommended the following approach:

(d) Unless the lawyer for the accused is prepared to forego impeachment of a witness by the lawyer's

---

1. All three had done housepainting work and were acquainted with one another.

2. It is significant that counsel for the Government took no position on counsel's request, except ruefully to state his sympathy with the position in which counsel found himself.

own testimony as to what the witness stated in an interview or to seek leave to withdraw from the case in order to present his impeaching testimony, the lawyer should avoid interviewing a prospective witness except in the presence of a third person. Standards Relating to the Prosecution Function and the Defense Function § 4.3 (Tentative Draft 1970). However, after counsel found himself in these circumstances, his suggested solution—personally to withdraw without any trial delay, substitute an associate as counsel, and then take the stand—was manifestly appropriate.[3]

■ The Government's view that counsel's testimony was available from other sources is untenable. No others were present during the interview between defense counsel and Mason, and only appellant was available to tell his version of the events at the scene of the crime. Furthermore, counsel's testimony was designed, not directly to dispute Mason's characterization of the crime, but rather fully to inform the jury of a conflicting story Mason had told shortly before the trial. The significance of that testimony, in view of Mason's directly conflicting answers described above, is obvious. In these circumstances, it was essential that counsel request permission to testify, and it was error to refuse his request. Cf. Jackson v. United States, 111 U.S.App.D.C. 353, 297 F.2d 195, 198 (1961) (concurring opinion of Judge (now Chief Justice) Burger).

In the course of her charge, the trial judge included the standard instruction on flight.[4] Flight instructions have received substantial criticism in recent years, chiefly because the risk is great that an innocent man would respond similarly to a guilty one when a brush with the law is threatened. See Wong Sun v. United States, 371 U.S. 471, 483 n. 10, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Miller v. United States, 116 U.S.App.D.C. 45, 320 F.2d 767 (1963).

This court has recently considered the issue in Austin v. United States, 134 U.S.App.D.C. 259, 414 F.2d 1155 (1969). In the Austin case, appellant was observed the day following the crime by the victim and an accompanying police officer. Appellant moved away at a rapid pace, and the officer was required to enlist the aid of passers-by eventually to catch up with appellant and arrest him in his apartment. The court found the instruction on flight erroneous under such circumstances, but not, absent an objection, plain error affecting substantial rights within the meaning of Rule 52, Fed.R.Crim.P.

■ In the instant case, the record is barren of meaningful evidence of flight by appellant. After the crime, appellant left the scene, remained within a one block radius for approximately 30 minutes, and then returned to speak with the victim, at which point the arrest occurred. In these circumstances, the flight instruction constituted plain error under Fed.R.Crim.P. Rule 52(b).

These errors at trial, certainly when taken in combination on a record wherein appellant presented a serious defense, require reversal and remand for a new trial.

It is so ordered.

3. See ABA Code of Professional Responsibility, Ethical Considerations 5–10: "* * * doubts should be resolved in favor of the lawyer testifying and against his becoming or continuing as an advocate." (footnote omitted). The Canons and Code are clear that counsel should avoid circumstances where his testimony may be required (see, e. g. id. § 5–9; Disciplinary Rules 5–101, 5–102). But in exceptional circumstances, such as those presented here, counsel's course appears acceptable.

4. Junior Bar Ass'n of D. C., Criminal Jury Instructions, No. 27.