UNITED STATES of America

v.

**William BROWN, Appellant**

No. 72–2080.

United States Court of Appeals, District of Columbia Circuit.

Argued April 12, 1973.

Decided Aug. 3, 1973.

Fred Warren Bennett, Washington, D. C. (appointed by this Court), was on the brief for appellant.

Harold H. Titus, Jr., U. S. Atty., John A. Terry, John T. Kotelly, and Richard L. Beizer, Asst. U. S. Attys., were on the brief for appellee. Frederick C. Moss and John J. Mulrooney, Asst. U. S. Attys., also entered an appearance for appellee.

Marilyn Cohen, Washington, D. C., was on the brief for the Public Defender Service as amicus curiae.

Before BAZELON, Chief Judge, and WRIGHT and MacKINNON, Circuit Judges.

BAZELON, Chief Judge:

This case raises difficult questions about a matter of importance that is

---

83. *Id.* § 369.7(a)(1)–(6) (1972).

continually before this court: the resolution of motions for bail pending appeal. The movant, William Brown, was convicted in federal District Court of armed robbery and assault with a dangerous weapon—both D.C. Code offenses.[1] Brown subsequently filed notice of appeal, and presented a motion in the District Court for release pending appeal. The trial judge denied the motion, stating that Brown did not meet the criteria for release set forth at 23 D.C.Code § 1325.

On this appeal, Brown argues that his motion was decided under the wrong statute. He maintains that motions for release in the federal courts of the District must be decided on the basis of the federal statute governing bail—The Bail Reform Act of 1966, 18 U.S.C. § 3148— rather than the D.C. Code provisions. The trial judge explicitly noted that Brown would be entitled to release under the federal bail statute, even though he could not be released under the harsher local code provisions. Accordingly, we proceed to determine which bail statute should apply to motions for release pending appeal in the federal courts of our jurisdiction.[2]

Prior to 1971, the right to bail pending appeal for any appellant in this court was determined in accordance with the Federal Bail Reform Act. In the D.C. Court Reform Act of 1970,[3] Congress enacted the harsher bail provisions codified at 23 D.C.Code § 1325(c).[4] We were first called upon to gauge the applicability of those provisions in United States v. Thompson, 147 U.S.App.D.C. 1, 452 F.2d 1333 (1971), cert. denied, 405 U.S. 998, 92 S.Ct. 1251, 31 L.Ed.2d 467 (1972). After a careful review of the language of the statute, the intent of Congress, and relevant Constitutional considerations, we held, in that case, that the bail provisions of the local code did not apply to an appellant who was convicted in the federal courts of a federal (U.S.Code) offense.

The *Thompson* opinion did not reach the question before us today—the applicability of the local provisions to an appellant convicted in federal court of a local (D.C.Code) offense. *Thompson* recognized the possibility that Congress might have intended the D.C.Code bail provisions to apply in such cases. The government now argues that what we recognized as "possible" in *Thompson* is in fact correct. The movant, on the other hand, argues that that possibility cannot govern this case, first because of statutory changes since the *Thompson* opinion was issued, and second because of Constitutional infirmities in the D.C.

---

1. 22 D.C.Code §§ 2901, 3202 (armed robbery); 22 D.C.Code § 502 (ADW).

2. We requested supplemental memoranda from the parties and from amicus curiae on this point, and we heard oral argument from the movant, the government, and

amicus. The court expresse its appreciation to amicus for her quite helpful participation.

3. Formerly titled "The District of Columbia Court Reform and Criminal Procedure Act of 1970," 84 Stat. 473–668 (1970).

---

4. The pertinent sections of the two codes provide:

*U. S. Code*

.A person who has been convicted shall be ordered released "unless the court or judge has reason to believe that no one or more conditions of release will reasonably assure that the person will not flee or pose a danger to the community. If such a risk of flight or danger is believed to exist, or if it appears that an appeal is frivolous or taken for delay, the person may be ordered detained." 18 U.S.C. §§ 3146, 3148.

*D. C. Code*

A person who has been convicted "shall be detained unless the judicial officer finds by clear and convincing evidence that (1) the person is not likely to flee or pose a danger to any other person or to the property of others, and (2) the appeal . . . raises a substantial question of law or fact likely to result in a reversal or an order for a new trial." 23 D.C.Code § 1325.

**1316**

Code bail provisions.[5] We need decide only the first of these questions today.

### I

On April 24, 1972, some six months after United States v. Thompson was issued, the Supreme Court adopted amendments to Fed.R.App.P. 9, and Fed.R. Crim.P. 46, providing that motions for release pending appeal in all federal courts should be determined in accordance with the Federal Bail Reform Act of 1966.[6] Those amendments became effective on October 1, 1972; under the clear command of statute,[7] any contrary provision of law became ineffective after that date. On this basis, appellant maintains that, even if the D.C. Court Reform Act did make the local bail provisions applicable to defendants in the federal courts, that statute was superseded by the subsequent action of the Supreme Court.

■■ There is no question but that the Supreme Court has the authority to establish the rules at issue here[8] and that these rules have the force of law. Sibbach v. Wilson & Co., 312 U.S. 1, 61 S.Ct. 422, 85 L.Ed. 479 (1941). The government contends that the new rules promulgated by the Court cannot repeal statutory provisions; but it is well settled that the Federal Rules can have that effect, Mookini v. United States, 303 U.S. 201, 206, 58 S.Ct. 543, 82 L.Ed. 748 (1938); indeed, the Supreme Court

reiterated that position just a few weeks ago. Davis v. United States, 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (U.S. 1973). Nor is there any question but that the Federal Rules apply to all criminal cases in the Federal Courts.[9] It seems to logically follow that the federal courts of this jurisdiction should adhere to dictates of the Federal Rules, as amended, rather than to the provisions of the D.C. Court Reform Act, which were thereby superseded.

At oral argument, government counsel recognized the cogency of this reasoning; he suggested, however, that neither Congress nor the Supreme Court could have intended this result. He argued that the Court's issuance of general rules on bail pending appeal for the nation as a whole was not meant to affect the application by the federal courts of the district of the provisions previously enacted by Congress for this particular jurisdiction. He said that the failure to exempt this circuit from the general rule was an "oversight"[10] on the part of the Court. We recognize at the core of this argument a salient principle: that courts should be wary of broad, general legislative pronouncements which appear to subsume specific provisions of prior law. In United States v. Wallace & Tiernan, Inc., 121 U.S.App.D.C. 245, 349 F.2d 222 (1965), we observed that those who prepare general codifications "must of necessity rely to a considerable extent

5. *Thompson*, of course did not consider the constitutionality of applying the local provisions to a local offender.

6. Fed.R.App.P. 9(c); Fed.R.Crim.P. 46 (c).

7. 18 U.S.C. § 3772 provides:
 The Supreme Court may fix the dates when such rules shall take effect and the extent to which they shall apply to proceedings then pending, and after they become effective all laws in conflict therewith shall be of no further force.

8. The government suggested at oral argument that the Supreme Court's authority to establish procedural rules does not give it authority to set conditions for bail. This is directly refuted by 18 U.S.C. §

3772. That section, entitled "Procedure After Verdict," states that the Court,
> may prescribe the times for and manner of taking appeals and applying for writs of certiorari and preparing records and bills of exceptions and the conditions on which supersedeas or bail may be allowed.

And, Congress "can be deemed to have adopted" rules issued under the Supreme Court's statutorily delegated authority. *See* Singer v. United States, 380 U.S. 24, 37, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965).

9. Fed.R.Crim.P. 1; Fed.R.App.P. 1.

10. The same argument appears at pp. 6–7 of the government's memorandum filed with this court on March 28, 1973.

on the work of their staff,[11] into which some errors will inevitably creep." [12] On the facts of that case, we refused to recognize as law a "clerical oversight" of drafting which superseded a specific prior rule. But, this case differs in many ways from Wallace & Tiernan.

■ A court of appeals is not generally inclined to assert that the Supreme Court has erred, either through "oversight" or otherwise. And it is particularly difficult in this case to suggest that the Court was unaware of the situation in the District of Columbia. Just one month before the Court issued the Federal Rules amendments, it had denied *certiorari* in United States v. Thompson, *supra*.[13] We recognize the dangers of attempting to draw meaning from a denial of *certiorari, cf.* Maryland v. Baltimore Radio Show, 338 U.S. 912, 70 S.Ct. 252, 94 L.Ed. 562 (1950), but we think it safe to assume from such action at least that the Court was familiar with the facts and the statute at issue in this case. Thus, we must be hesitant to accept the U.S. Attorney's "oversight" argument. In addition, our rejection of the "oversight" argument does not render the D.C.Code bail provisions a nullity for they remain applicable to offenders convicted in local courts. Accordingly, we agree with appellant and *amicus* that the amendments to Fed.R. App.P. 9, and Fed.R.Crim.P. 46, should be taken at face value; that this federal court, like all other federal courts, should determine motions for bail pending appeal in accordance with the Federal Bail Reform Act, 18 U.S.C. § 3148.

II

■ Ascertaining an unstated legislative purpose is a hazy business at best, but we are fortified in our conclusion by a well-recognized cannon of statutory construction—"when one interpretation of a statute would create a substantial doubt as to the statute's constitutional validity, the courts will avoid that interpretation absent a 'clear statement' of contrary legislative intent." United States v. Thompson, *supra*, 146 U.S. App.D.C. at 5, 452 F.2d at 1337. As appellant suggests, adoption of the government's construction would necessarily pose difficult questions of constitutional law.

Appellant and *amicus curiae* argue that the D.C.Code bail provisions, by creating a harsher standard for release than that embodied in the Federal Bail Reform Act, violate the Constitutional guarantee of equal protection of the laws; *cf.* Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954). This suggestion follows from our discussion of the D.C.Code provisions in United States v. Thompson, *supra*. We noted there that the D.C.Code bail provisions single out a "powerless, voteless minority" the residents of the District of Columbia [14] for special, and harsher,

---

11. It is public knowledge that the Supreme Court relies on a "Committee named by the Judicial Conference" for revisions of the Federal Rules. *Cf.*, Douglas, J., dissenting from the order of November 20, 1972, 56 F.R.D. 185. Mr. Justice Douglas states that the Court "is a mere conduit." *Id.*

12. 121 U.S.App.D.C. at 247, 349 F.2d at 226.

13. 405 U.S. 998, 92 S.Ct. 1251, 31 L.Ed.2d 467 (March 20, 1972).

14. *See* San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 26, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973) (those "relegated to . . . a position of political powerlessness" are entitled to extraordinary constitutional protections). The problems that have surfaced under the mantel of "equal protection" in *Thompson* and similar cases are actually just symptoms of· a more basic problem: the fundamental unfairness of depriving 756,000 American citizens (the residents of Washington, D.C.) of a voice in the selection of those who govern them. *Cf.* Reid, "One Man—No Vote," The Washington Monthly, April, 1970, at 66–67. While it is true that the Constitution gives Congress plenary power over the District of Columbia, O'Donoghue v. United States, 289 U.S. 516, 538–539, 53 S.Ct. 740, 77 L.Ed. 1356 (1933), the authors of our Constitution probably never thought that Congress would use that power to deny the citizens of the

treatment in regard to a right "fundamental" in the sense that it "involves issues of personal freedom." [15] We determined that a limiting interpretation of the statute was necessary to avoid unconstitutional discrimination. Accordingly, we held that the D.C.Code bail provisions could not be applied to a federal offender in a federal court.

Such considerations might also apply to the situation before us: application of the D.C.Code bail provisions to local offenders in a federal court. If we were to accept the government's contention that the local provisions do apply, then certain defendants in the federal courts of this jurisdiction would be treated more harshly than defendants in any other federal court—at least as far as bail pending appeal is concerned. As we noted in *Thompson* such discrimination might be justified if this court were dealing with crimes that are prosecuted in no other federal court. 147 U.S.App. D.C. at 7, 452 F.2d at 1340. But, it is unclear whether that rationale would apply to Brown's case. The "local" armed robbery for which Brown was convicted may not be discernably different from crimes that are regularly prosecuted in federal courts nationwide: *e. g.*, 18 U. S.C. § 2111 (robbery in a federal enclave); 18 U.S.C. § 2113 (bank robbery); 18 U.S.C. § 2114 (robbery of mail); 18 U.S.C. § 111 (assault on a federal officer).

The government concedes that applying the local statute in Brown's case must lead to unequal treatment of offenders within the federal system, but argues that Congress has rationally chosen to tolerate such inequality in order to achieve equal treatment of all those accused and convicted of local offenses in the District of Columbia.[16] There is, however, no clear indication in the legislative history that Congress did balance

uniformity within the District against uniformity within the federal system.

Brown further contends that the D.C. Code bail provisions deny due process of law to convicted offenders. Brown's attack concentrates on the requirement that release be denied "unless the judicial officer finds by *clear and convincing* evidence that . . . the appeal raises a substantial question of law or fact *likely to result in reversal* . . . ." 23 D.C.Code § 1325(c) (emphasis supplied). Appellant asserts that this standard may be inconsistent with the "safeguards for disinterestedness and detachment" which the due process clause demands, because it often requires a judge to find clear and serious errors in his own conduct of the trial. *See* Bartkus v. Illinois, 359 U.S. 121, 128, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959). The federal statute requires only that the trial judge find the defendant's legal arguments are not frivolous in order to grant release; a judge can readily find the existence of a nonfrivolous question without being forced to conclude that he has made an error likely to result in reversal.

Appellant and amicus also suggest that the D.C.Code provisions deny due process by requiring application of a standard which virtually precludes release. Neither side has presented any statistics on this point. As the government has reminded us, it has been said that there is no "automatic" right to bail pending appeal. Bowman v. United States, 85 S.Ct. 232, 13 L.Ed.2d 171 (1964). On the other hand, it has also been said that the government cannot automatically deny release. Harris v. United States, 404 U.S. 1232, 92 S.Ct. 10, 30 L.Ed.2d 25 (1971). Justice Black observed that the Constitution "obligates judges to deny [bail] only for the strongest of reasons." Sellers v. United

District all voting rights whatsoever. *See* Madison's statement that "a municipal legislature for local purposes, derived from their own suffrages, will of course be allowed them." *Federalist* No. 43.

15. United States v. Benjamin Thompson, 147 U.S.App.D.C. 1, 7, 452 F.2d 1333, 1340.

16. *Cf.* Memorandum of Appellee at 18, n. 2.

States, 89 S.Ct. 36, 38, 21 L.Ed.2d 64 (1968). Whether the D.C.Code standard is so unreasonable as to be unconstitutional, in view of the competing interests, is a question of the greatest difficulty.[17]

We do not decide today whether appellant is correct in asserting that the application of 23 D.C.Code § 1325(c) to his motion violates constitutionally guaranteed rights. The need to do so is obviated by our acceptance of appellant's statutory construction argument.

## III

Application to Brown's motion of the rule announced herein is a simple task. The trial judge has already determined that Brown is entitled to release pending

17. This claim involves the difficult problem of striking a balance between the societal interests in incarceration of convicted persons and the individual's interest in liberty—a process fraught with practical and moral complications of the highest order. We must take steps to assure that those who are properly convicted of crimes will not flee or pose a danger to others while their convictions are being appealed; and we should also respect society's interest "in seeing that there is a prompt beginning to the sentence imposed by the court." The countervailing interests of the individual defendant are also weighty. A defendant who has been wrongfully convicted stands to lose the most basic freedom of all— "the freedom to be free"—if he is denied release pending appeal. United States v. Thompson, 147 U.S.App.D.C. 1, 452 F.2d 1333 (1971).

This is not all merely the hypothecation of a theoretical civil libertarian. Three recent cases in our court demonstrate quite disturbingly the impact of the bail statute that is before us today. Wilbur Jones, Claude Smith, and James Jarvis were all convicted of D.C.Code offenses in the U.S. District Court. All three moved for release pending appeal, pointing out in their motions substantial errors in their trials. The arguments raised on appeal in each of the cases raised substantial doubt as to whether the defendants were guilty of the crimes for which they were charged. Yet all three motions for release were denied under 23 D.C.Code

appeal under the federal release pending It follows that the motion for release in this case is

Granted.

MacKINNON, Circuit Judge, dissenting:

The majority opinion reaches the conclusion that the D.C.Code provisions on bail pending appeal do not apply to one convicted of a D.C.Code offense in the United States District Court (which at that time had original jurisdiction to try D.C.Code offenses) because "On April 24, 1972, some six months after U. S. v. Thompson was issued, the Supreme Court adopted amendments to Fed.R. App.P. 9, and F.R.Crim.P. 46,[1] providing. that motions for release pending appeal in all federal courts should be deter-

§ 1325(c). In two of the three cases, the trial judge found the statutory prohibition against release to be so strong that he did not even consider the issues raised on appeal in ruling on the motion. *See* United States v. Jones, 476 F.2d 885 (1973) (dissenting opinion of Chief Judge Bazelon).

On April 27, 1973, a unanimous panel of this court reversed the convictions of Claude Smith and James Jarvis. United States v. Smith & Jarvis, 478 F.2d 976 (D.C.Cir., 1973). In these cases, two men were each erroneously forced to serve over a year in prison.

1. The applicable subsections of Fed.R.App. P. 9 and Fed.R.Crim.P. 46 provide:

(c) Criteria for Release. The decision as to release pending appeal shall be made in accordance with Title 18, U.S.C. § 3148. The burden of establishing that the defendant will not flee or pose a danger to any person or to the community rests with the defendant. As amended April 24, 1972, eff. Oct. 1, 1972.

Fed.R.App.P. 9(c).

(c) Pending Sentence and Notice of Appeal. Eligibility for release pending sentence or pending notice of appeal or expiration of the time allowed for filing notice of appeal, shall be in accordance with 18 U.S.C. § 3148. The burden of establishing that the defendant will not flee or pose a danger to any other person or to the community rests with the defendant.

Fed.R.Crim.P. 46(c).

mined in accordance with the Federal Bail Reform Act of 1966." *Supra* at 2.

This was adopted as a general rule applicable to all United States courts and it did not contain any express repeal of the release provisions of the District of Columbia Court Reform Act of 1970. Thus, it is an intent to accomplish an *implied* repeal that the majority finds. However, the *scope* of the Rules was not in any way changed at that time,[2] and it is the "scope" of the Rules that we are concerned with in the decision. In this respect the Rules specifically define their scope when they state they apply to "United States District Courts" and "United States Courts of Appeals"[3] and since *there was no change of a legislative nature* in the Rules providing for the scope of their application or in the Federal Bail Reform Act of 1966 the *scope* of the Rules would not be affected by the amendments to Rules 9 and 46, *supra.*

This brings us to the question as to what Congress intended to accomplish when it passed the D.C. Court Reform Act of 1970 containing the release and bail provisions now set forth in D.C. Code § 23–1325(c).[4] The effect of the majority opinion is to have us read the release and bail provisions of that D.C. statute to not apply to any felony conviction for D.C. Code offenses (which include murder, armed robbery, rape, etc.) since all felonies in the District of Columbia at that time were tried in the United States District Courts. Under such claimed construction, offenders convicted of District of Columbia *felo-*

*nies* in the U.S. courts would be released under what the majority asserts is a more lenient bail statute, while those convicted of misdemeanors (and tried in the D.C. courts) would be under an allegedly harsher bail statute. Such construction is absurd as a plain reading of the statute and our judicial knowledge of criminal offenses in the District of Columbia indicates that it was intended principally to apply to major D.C. felonies.

I thus have no hesitancy in concluding that neither the Congress nor the Supreme Court intended at any time to accomplish the result reached by the majority. It is clear to me from a reading of the controlling provisions of the Rules and statutes that the bail provisions of the D.C. Court Reform Act of 1970 were at all times intended, both by the Congress and the Supreme Court, to apply to those convicted of *both* felonies and misdemeanors in the District. In reaching this conclusion, I interpret the terms "United States District Courts" and "United States Courts of Appeals" in the quoted Rules to refer to the United States District Court for the District of Columbia and the United States Court of Appeals for the District of Columbia Circuit when they were exercising the regular *federal* jurisdiction of the United States Courts of Appeals and District Courts, and not when they are exercising the special jurisdiction (equivalent to that of state felony courts) encompassing the trial and appeal of local D.C. crimes that are not regularly tried or heard by any other U. S. courts in the nation.

---

2. Fed.R.App.P. 1; Fed.R.Crim.P. 1, 54 (a), (c).

3. *Supra* n. 2.

4. D.C.Code § 23–1325(c) (Supp. V, 1972) provides:
 (c) A person who has been convicted of an offense and sentenced to a term of confinement or imprisonment and has filed an appeal or a petition for a writ of certiorari shall be detained unless the judicial officer finds by clear and convincing evidence that (1) the person is not likely to flee or pose a danger to any other person or to the property of others, and (2) the appeal or petition for a writ of certiorari raises a substantial question of law or fact likely to result in a reversal or an order for new trial. Upon such findings, the judicial officer shall treat the person in accordance with the provisions of section 23–1321.

At the time this case was tried, and for many years prior thereto (to some extent the jurisdiction still exists), the U.S. courts in the District of Columbia had a twofold jurisdiction, which differed greatly from other U.S. District Courts and Courts of Appeals, in that it included jurisdiction, in both criminal and civil matters, that is generally exercised by *state* trial courts and Supreme Courts in the various *states*. This local type jurisdiction was in addition to the federal jurisdiction conferred on U.S. District Courts and U.S. Courts of Appeals. It is only to the local type offenses within that state type criminal jurisdiction of the U.S. courts in the District of Columbia that I would hold the release and bail provisions of the D.C. Court Reform Act of 1970 applicable. It just does not make sense to attribute to Congress and the Supreme Court an intent to fragment that D.C. Act, so as to have it only apply to felonies and not to misdemeanors, and thus attribute to Congress and the Supreme Court an intent to accomplish an absurdity.

To hold that the release and bail provisions of the D.C. Court Reform Act of 1970 apply to D.C.Code offenses is also required by the well recognized rule of statutory interpretation that a "specific statute controls the general [statute] absent a contrary legislative intent and without regard to priority of enactment." The Supreme Court has stated the rule:

But even if petitioner were correct in concluding that § 2411(a) is to be regarded as the later enactment, it would not necessarily take precedence over § 3711(e), for it is familiar law that a specific statute controls over a general one "without regard to priority of enactment." Townsend v. Little, 109 U.S. 504, 512, 3 S.Ct. 357, 362, 27 L.Ed. 1012. *See, e. g.,* Ginsberg & Sons v. Popkin, 285 U.S. 204, 208, 52 S.Ct. 322, 323, 76 L.Ed. 704; Mac-

Evoy Co. v. United States, 322 U.S. 102, 107, 64 S.Ct. 890, 893, 88 L.Ed. 1163; Fourco Glass Co. v. Transmirra Corp., 353 U.S. 222, 228–229, 77 S.Ct. 787, 791–792, 1 L.Ed.2d 786.

Bulova Watch Co. v. United States, 365 U.S. 753, 758, 81 S.Ct. 864, 6 L.Ed.2d 72 (1961). We have recognized the existence of substantially the same rule:

Moreover, the Railway Labor Act is a specific statute directed and limited to proceedings of a special type. The Administrative Procedure Act is general legislation. *It is well settled that a specific statute will not ordinarily be deemed superseded, amended or repealed by a later enactment of a general character.* Bulova Watch Company v. United States, 365 U.S. 753, 758, 81 S.Ct. 864, 6 L.Ed.2d 72. (Emphasis added).

Brotherhood of Loc. Fire & Eng. v. Chicago, B. & Q. R. Co., 225 F.Supp. 11, 18 (D.D.C.), aff'd, 118 U.S.App.D.C. 100, 331 F.2d 1020, cert. denied, 377 U.S. 918, 84 S.Ct. 1181, 12 L.Ed.2d 187 (1964). To the same effect, we held earlier:

It is a canon of statutory construction that, where there is an earlier special statute and a later general statute, the terms of the later being broad enough to include the matter provided for in the former, the special statute must be considered as an exception to the general statute. Ex parte Crow Dog, 109 U.S. 556, 570, 3 S.Ct. 396, 27 L.Ed. 1030; Rodgers v. United States, 185 U.S. 83, 87, 99, 89, 22 S.Ct. 582, 46 L.Ed. 816.

Simon v. Simon, 58 U.S.App.D.C. 158, 160, 26 F.2d 530, 532 (1928). These decisions refer to instances where the general statute was the later enactment, but here the special statute was the later enactment. In such instance it is even clearer that the intent is to have the special prevail (*see* n. 9, *infra*). *See*

**1322**

*generally* 50 Am.Jur. Statutes § 561 and 82, C.J.S. Statutes § 369:

> For purposes of interpretation, legislative enactments have long been classed as either general or special, and given different effect on other enactments dependent as they are found to fall into one class or the other. Where there is one statute dealing with a subject in general and comprehensive terms, and another dealing with a part of the same subject in a more minute and definite way, the two should be read together and harmonized, if possible, with a view to giving effect to a consistent legislative policy; *but, to the extent of any necessary repugnancy between them, the special statute, or the one dealing with the common subject matter in a minute way, will prevail over the general statute, according to the authorities on the question, unless it appears that the legislature intended to make the general act controlling;* and this is true a fortiori when the special act is later in point of time, *although the rule is applicable without regard to the respective dates of passage* . . . . *[A]nd where the general act is later, the special statute will be construed as remaining an exception to its terms, unless it is repealed in express words or by necessary implication.* (Emphasis added; footnotes omitted).

The application of the foregoing principles is illustrated by Arizona Corp. Com'n v. Catalina Foothills Estates, 78 Ariz. 245, 278 P.2d 427 (1954), wherein the court was faced with the question of whether a special statute enacted in 1939 requiring appeals from the Corporation Commission to be taken within thirty (30) days should be applied or whether the time limit of thirty days was repealed by implication by the subsequent adoption in 1940 of a *court rule* permitting appeals to be taken within

sixty (60) days. The facts are thus closely in point to the factual situation here present. In holding that the adoption of the rule by the Supreme Court did not repeal the special statute by implication, the court pointed out:

> The rule is that a later act, general in its terms will not be construed as repealing a prior act treating in a special way something within the purview of the general act. In other words, a special or particular statute is not repealed by a general statute, unless the intent to repeal is manifest. . . . It should also be borne in mind that 'repeals by implication are not favored, and will not be indulged if there is any other reasonable construction. . . . Another rule is 'that different statutes bearing upon the same subject matter should be so construed, if possible, as to give effect to all.' . . . For later applications of these tenets, see: Favour v. Frohmiller, 44 Ariz. 286, 36 P.2d 576; State v. Miser, 50 Ariz. 244, 72 P.2d 408; Shapley v. Frohmiller, 64 Ariz. 35, 165 P.2d 306; Arizona Tax Comm. v. Dairy & Consumers Cooperative Ass'n, 70 Ariz. 7, 215 P.2d 235.

278 P.2d at 428.

> It should be noted that other courts have determined that similar provisions of a code of civil procedure did not work an implied repeal of earlier enactments concerning special proceedings. See Hannon v. Grand Lodge, A.O.U.W. of Kansas, 99 Kan. 734, 163 P. 169, supra; Lee v. Lincoln Cleaning & Dye Works, 144 Neb. 659, 14 N.W.2d 227; Duncan v. Ashwander, D.C.W.D.La., 16 F.Supp. 829.

278 P.2d at 429–430.

Applying these principles the court held that the rule promulgated by the state supreme court did not indicate an intention to repeal or in any manner affect the earlier statutory provision. The de-

cision is practically on all fours with the issue here except that the instant case presents a stronger indication that there was never any intent to have Rules 9 [5] and 46 [6] apply to local offenders in the District of Columbia. This is evident from the language of both rules [7] wherein they provide that release pending appeal shall be "in accordance with Title 18, U.S.C. § 3148." The rule thus makes the *statute* applicable and it is unquestioned that such *statute*, enacted on June 22, 1966 (80 Stat. 215),[8] had no application to offenders in the District of Columbia after the enactment on July 29, 1970 (84 Stat. 647) of the release provisions of the D.C. Court Reform Act of 1970.[9] It is also clear that the D.C. release provisions apply because they are a special statute and because they constitute the later enactment.[10]

I would thus hold the D.C.Code provisions to apply to all releases in the U.S. courts of the District of Columbia in connection with all D.C.Code offenses because the adoption of the Rules contained no express repeal, because the presumption is against repeals by implication,[11] because special statutes generally do not repeal special or local statutes and because the language of the Rules only makes the 1966 *statute* applicable and they do not reenact the 1966 *statute* so as to constitute it a later enactment over the 1970 statute. Thus, section 3148 only applies to the extent that it applied as a *statute* and after 1970 this had no application to releases in the District of Columbia.

I accordingly respectfully dissent from the contrary conclusion reached by the majority.

5. *Supra* note 1.

6. *Id.*

7. *Id.*

8. The addition of the short phrase to this single section on October 15, 1970, Pub.L. 91–452 (84 Stat. 952) would not alter the basic character of the statute as being a

1966 enactment. *See* Pub.L. 89–465, June 22, 1966 (80 Stat. 214–217).

9. D.C.Code § 23–1325 (84 Stat. 647).

10. *Supra* note 8.

11. 1A Sutherland, Statutory Construction § 23.10 (Sands 4th ed. 1972).